612 So.2d 812 (1992)
L.V.
v.
David LIBERTO, Greenbrier Hospital, Healthcare Services of America, Inc., St. Tammany Parish School Board.
No. 91 CA 2227.
Court of Appeal of Louisiana, First Circuit.
December 23, 1992.
*813 Richard Ducote, New Orleans, for L.V.
Eve Barrie Masinter, New Orleans, for defendants-appellees Greenbrier/Ramsey.
Harold J. Adkins, Baton Rouge, for School Board.
Before LOTTINGER, C.J., FOIL, J., and FOGG,[*] J. Pro Tem.
LOTTINGER, Chief Judge.
This is an appeal from a judgment maintaining the defendants' peremptory exception raising the objection of prescription. Plaintiff asserts that Greenbrier Hospital, an inpatient psychiatric hospital, and the St. Tammany Parish School Board, which provided teachers to educate children committed to the hospital, were caretakers within the meaning of La.Civ.Code articles 3496.1 and 3469 such that plaintiff had three years in which to file her lawsuit, rather than the one year provided for in La.Civ.Code article 3492. Defendants asserted, and the trial court agreed, that they were not caretakers within the meaning of articles 3496.1 and 3469. The court thus found that plaintiff was required to file her suit within the one year prescriptive period generally applicable to delictual actions.

FACTS
According to her petition and appellate brief, L.V. was born on January 15, 1972, and at the age of 16 was committed to Greenbrier Hospital via a "formal voluntary admission" initiated by her parents. One aspect of her commitment meant that she could be held, against her will, at Greenbrier for up to 72 hours after requesting to leave. She remained in the hospital for almost 5 months, from November 4, 1988, to March 28, 1989. She alleges she was sexually battered on February 15, 1989, by David Liberto, a teacher assigned to the hospital to educate resident children. Liberto was an employee of the St. Tammany Parish School Board. The school board had a contract with the hospital to provide teachers to educate inpatient children.
L.V. did not report her battery to anyone until March 8, 1989, when she reported the incident to her mother. Letters, attached as exhibits to memoranda filed in support of the defendants' peremptory exception raising the objection of prescription, indicate that L.V. sought to settle this matter prior to filing suit on March 7, 1990. It is apparent, therefore, that L.V. filed her suit more than one year after the alleged battery occurred. This was the basis for the defendants' exceptions.
On February 19, 1991, L.V. filed an amended petition for damages in which she alleged that the defendants were her caretakers, during her confinement at Greenbrier, *814 within the meaning of La.Civ.Code articles 3496.1 and 3469. This was undoubtedly an attempt to save her suit from the defendants' prior pleas of prescription, as it would remove her claim from La.Civ. Code article 3492's one year prescriptive period and place it within article 3496.1's three year prescriptive period, which would have commenced to run from the date L.V. reached the page of majority, January 15, 1990.
Thus, the parties focused their arguments on the meaning of caretaker in La. Civ.Code article 3469, to which article 3496.1 specifically refers, in an attempt to determine whether L.V. could avail herself of the longer prescriptive period. The trial court, in conscientious written reasons for judgment, determined that the defendants would have had to have been under a court order to provide care for L.V. before it could be said that they were her caretakers, within the meaning of article 3469, for purposes of prescription. The court, however, did not cite any authority for its conclusion, and we find otherwise for reasons which follow.

ASSIGNMENTS OF ERROR
L.V. assigns as error:
1. The trial court manifestly erred in ruling that the applicable prescriptive period was one year from February 15, 1989.
2. The trial court manifestly erred in maintaining the exceptions (sic) and dismissing the suit.
3. The trial court manifestly erred in ruling that Greenbrier and the school board were not caretakers within the meaning of LSA-C.C. arts. 3469 and 3496.1.
4. The trial court manifestly erred in ruling that a "caretaker" under LSA-C.C. arts. 3469 and 3496.1 requires the existence of a court order creating the relationship.
5. The trial court manifestly erred in ruling that prescription was not suspended.

DISCUSSION
For purposes of this opinion, we will treat assignments of error 1, 3, and 4 as the equivalent of assignment of error 2, and pretermit assignment of error 5 because the second assignment necessarily includes consideration of the former, and obviates consideration of the latter. Further, we note that inasmuch as this is a question of law, the manifest error doctrine does not apply.
When evaluating which prescriptive period is applicable to a cause of action, courts look first to the character of the action disclosed in the pleadings. Starns v. Emmons, 538 So.2d 275, 277 (La.1989). Here, L.V. is asserting that defendants are answerable to her in damages because she suffered a sexual battery while a minor at Greenbrier Hospital. Thus, she alleges, her action may equally be characterized as a general delictual action and as child abuse.[1] If her action were viewed only as a general delictual action, her claim would be barred by the passage of one year. La.Civ.Code article 3492. However, if her action is also viewed as one for child abuse, L.V. may claim the benefit of the three year prescriptive period set forth in La.Civ. Code article 3496.1.
To do this, L.V.'s pleadings must disclose that she is suing those who were her caretakers during minority at the time the alleged incident occurred. Article 3496.1 states that its definition of caretaker is contained in article 3469, the article which in other instances suspends the running of prescription between caretakers and minors. See La.Civ.Code articles 3467, 3468, and 3492.
Article 3469 defines a caretaker as "a person legally obligated to provide or secure adequate care for a child, including a tutor, guardian, or legal custodian." The *815 parties have wrestled with the meaning of the "including" clause; they cannot agree as to whether it constitutes an exhaustive or an illustrative list. A grammatical reading of the entire sentence discloses its meaning. This is an illustrative list of familiar terms, each of which describes persons already "legally obligated to provide or secure adequate care for a child."[2]
Of more concern to the trial court was the meaning of the phrase "legally obligated." The trial court concluded that these words denote a court order. The court cited no authority for this proposition, and indeed, it is incorrect. While it may be true that those terms denote individuals who are legally obligated because of a court order, it is also true that in some instances, an individual may become legally obligated by other means. See La.Civ.Code articles 247 and 248 regarding tutors. The Civil Code's articles on "Obligations in General" define an obligation as "a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something." La.Civ.Code article 1756. Further in Article 1757, the Code provides that:
Obligations arise from contracts and other declarations of will. They also arise directly from the law, regardless of a declaration of will, in instances such as wrongful acts, the management of the affairs of another, unjust enrichment and other acts or facts.
Thus, we can see that the defendants may be obligated to L.V. in a number of ways, none of which necessarily contemplates a court order.[3] The definition of caretaker cannot depend alone upon determining how one is legally obligated to the minor. It must also depend upon the nature of the relationship between the minor and caretaker. In Kozlowski v. State, Department of Health and Human Resources, 534 So.2d 1260 (La.App. 5th Cir. 1988), writ denied, 538 So.2d 592 (La.1989), the father of a child sued the state for negligence in failing to protect his son from the scalding he received at the hands of his mother. The state had ignored the father's accusations of child abuse and failed to act upon or investigate Kozlowski's reports. In reaching its decision, using La.Civ.Code article 3469 prior to the insertion of the "caretaker" language, the court focused upon the fact that the state had assumed legal and physical custody of the child.
On rehearing, the court was confirmed in its reasoning by the addition of the "caretaker" language which, the court felt, was meant to protect minors in situations where prescription was not suspended between a minor and caretaker who was not also the minor's parent. Kozlowski, 534 So.2d at 1272-1273. Viewed in this light, the definition of caretaker in the second paragraph of article 3469 must contemplate that a caretaker is one who has both a legal obligation to care for, and physical custody of, a child of a nature that is more encompassing than, for example, the relationship between a teacher or school or a child in a typical non-residential setting.
Here, however, despite the fact that L.V. was a resident of the facility in which education is conducted, the school board cannot be said to be a caretaker because of a contractual obligation to educate a child who is not at liberty to immediately leave an educational facility. The school board, by contract, provided educational services to residents of the hospital. This was done to comply with Acts 1977, No. 754, section 1, enacting La.R.S. 17:1941, et seq., dealing with the education of exceptional children. *816 The school merely went to the hospital, rather than the children of the hospital going to the school. L.V., despite being in this hospital, was just like a child in any other public school. Thus, the public schools are not "caretakers" of their students within the meaning of La.Civ.Code articles 3496.1 and 3469. Therefore, L.V. had to file her suit against the school board within one year, failing which, her suit against the board is prescribed.[4]
Therefore, we find that the trial court erred in maintaining the hospital's peremptory exception raising the objection of prescription because it was L.V.'s caretaker within the meaning of La.Civ.Code articles 3496.1 and 3469. The trial court was correct in maintaining the peremptory exception in favor of the school board. Thus, L.V.'s action was filed well within the applicable three year prescriptive period insofar as Greenbrier Hospital and Healthcare Services of America, Inc. are concerned.

CONCLUSION
Therefore, the judgment of the trial court is REVERSED as it pertains to the hospital and AFFIRMED as it pertains to the school board, and this case is REMANDED for further proceedings. Costs of this appeal are assessed against Greenbrier Hospital and Healthcare Services of America, Inc.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
NOTES
[*] Judge Kenneth J. Fogg is serving as judge pro tem by special appointment of the Louisiana Supreme Court.
[1] La.R.S. 14:403(B), for example, defines abuse of a child as encompassing sexual abuse. As the trial court correctly states, however, the definition of "caretaker" in that statute does not answer the question as to whether these defendants were caretakers of L.V. for purposes of prescription. That statute limits the definitions it contains to criminal matters.
[2] We are confirmed in our reading of this definition by the Legislature's amendment of article 3496.1, wherein the Legislature removed the reference to "caretaker" to "provide a prescription period for actions against any person for abuse of a minor..." Acts 1992, No. 322, effective August 21, 1992. While this amendment does not apply in this case, it, along with other enactments, shows a legislative intent to consistently broaden the opportunities for minors to sue their abusers whenever, and by whomever, the abuse occurs. See Bock v. Harmon, 526 So.2d 292, 297 (La.App. 3rd Cir.), writ denied, 531 So.2d 275 (La.1988); Acts 1988, No. 676, effective September 9, 1988.
[3] See note 2, supra.
[4] We note that our decision is limited to application of La.Civ.Code article 3496.1 as it read prior to its amendment by Acts 1992, No. 322, effective August 21, 1992. Prescription, having already accrued in favor of the school board, is a vested right for this defendant that may not be divested by a retroactive application of the amendment. See Kozlowski v. State, Department of Health and Human Resources, 534 So.2d 1260, 1273 (La.App. 5th Cir.1988) (on rehearing).