831 So.2d 926 (2002)
SS, Individually and as Representative of the Minors, LMW, BAW, and CLW
v.
STATE of Louisiana, through the DEPARTMENT OF SOCIAL SERVICES and Educational and Treatment Council, Inc.
No. 2002-C-0831.
Supreme Court of Louisiana.
December 4, 2002.
*927 Virgil R. Purvis, Jr., SMITH, TALIFERRO, PURVIS & BOOTHE, Jonesville, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Adam L. Ortega, Jr., Asst. Attorney General, Joe A. Brame, BRAME & MCCAIN, Lake Charles; William J. Sommers, Jr., New Orleans, PRESTON & COWAN, Counsel for Respondent.
*928 KNOLL, Justice.
This case involves the question of the proper application of liberative prescription as it relates to alleged tortious conduct that affects a minor during the time she was adjudicated a child in need of care and that occurred while she was in the custody of the State. Finding prescription suspended under LA CIV.CODE ANN. art. 3469 and LA.REV.STAT. ANN. § 9:2800.9, we reverse the judgment of the appellate court which had dismissed the plaintiffs' claims as being prescribed.

FACTS AND PROCEDURAL HISTORY
On June 3, 1993, the Juvenile Court for the Parish of Rapides adjudicated CW, LW, and RW,[1] the minor children of SS and RW, Sr.,[2] children in need of care, removed them from their custody, and placed the children in the custody of the State of Louisiana, Department of Social Services (DSS). At the time of adjudication, CW was 13 years of age, LW was 12 years of age, and RW[3] was approximately 15 years of age. While in the custody of DSS, the children, who were split up and placed in different foster care facilities, frequently ran away.
On July 31, 1995, LW was transferred to Lake Charles, Louisiana, where she was housed in Harbour House, a shelter care facility[4] operated by Educational and Treatment Council, Inc. (ETC) under contract with the State of Louisiana. On August 17 and 19 LW ran away from Harbour House. On the latter occasion, at approximately 10:45 p.m., LW walked out of the front door of Harbour House and met Brian Mayes, a 30 year old employee of ETC, at a location near Harbour House. Although this was a pre-arranged meeting between LW and Mayes and was purportedly planned as a means for LW to visit her mother in the Alexandria area, Mayes instead took LW to his trailer where they spent the night together. At that time Mayes engaged LW in non-consensual sexual intercourse; allegedly, as a result of that union LW became pregnant. On the next morning, Mayes refused to help LW travel to visit her mother. After Mayes went to work, LW then left the trailer, walked to a nearby store, and called the police to let them know she was a runaway. At that time, the police returned LW to Harbour House. When asked if she told Harbour House of Mayes's actions, LW responded in the negative.[5]
*929 On August 29, 1995, DSS moved LW from Harbour House and placed her at the Baton Rouge Youth, Inc. facility. Thereafter, DSS again moved LW and placed her at the Renaissance Group Home for Girls. In September 1995, while at the Renaissance Group Home, LW again ran away, joined her siblings, and together they took up residence at a motel in the Dallas area. LW's whereabouts remained unknown to DSS until March 1996. When LW resurfaced, she was seven months pregnant.
Because of the children's lack of cooperation, DSS petitioned the court to have the children released from its custody.[6] Pursuant to that recommendation, on May 3, 1996, the juvenile court complied with DSS's request and released the children from its custody. On May 30, 1996, LW gave birth to BW. It is alleged that as a result of the lack of prenatal care, BW was born with various health problems. In June 1996, RW, LW's oldest sibling, then the age of majority, committed suicide.
On December 23, 1996, SS, individually and on behalf of LW and CW, her two minor daughters, and BW, her grandson, filed a petition for damages against DSS and ETC.[7] The petition alleged that the defendants committed negligence, malfeasance, and intentional tortious acts in the removal of SS's custody and in its duty to oversee their care and custody. The primary claim brought on LW's behalf stems from the allegation that ETC's employee Mayes raped her while she was a resident of Harbour House. In addition, SS, basing her claim on 42 U.S.C. § 1983,[8] further alleged that ETC denied the plaintiffs their various civil rights. On September 26, 1997, ETC removed the suit to federal court. Subsequently, on November 13, 1997, the federal district court remanded the matter to Louisiana district court.
In its answer to the petition, DSS, inter alia, urged the peremptory exception of prescription. ETC filed, inter alia, a similar peremptory exception in its answer.
On June 19, 1998, the trial court granted ETC's peremptory exception of no cause of action and dismissed plaintiffs' claims against ETC with regard to BW and CW, neither of whom were ever in ETC's facility; this judgment was not appealed. In a stipulated judgment on June 17, 1999, SS further assented to dismissal of any claim she may have made against ETC with regard to the death of her son, RW.
Later, ETC, focusing solely on LW's claim, filed a motion for partial summary judgment on the question of its vicarious *930 liability for the intentional tort of Mayes, its employee.[9]
The plaintiffs also filed a motion for partial summary judgment on the issue of DSS and ETC's liability. In the motion, SS alleged that the liability of DSS and ETC arises out of their negligence in caring for LW. The motion claims that DSS and ETC are liable to LW for the alleged rape (or carnal knowledge of a juvenile) and the resulting pregnancy.
At a hearing on January 16, 2001, the trial court denied the peremptory exceptions of prescription.[10] It granted ETC's motion for partial summary judgment as to its freedom from vicarious liability for the intentional tort of its employee.[11] Finally, the trial court also granted the plaintiffs' motion for partial summary judgment, finding liability established as to ETC and DSS and limiting the trial to the issue of damages.
DSS and ETC appealed the trial court's denial of their peremptory exceptions of prescription. They also appealed the trial court's granting of the plaintiffs' motion for partial summary judgment as to the issue of their liability. Finding merit with the issue of prescription, a majority of the appellate court, relying upon LA. CIV.CODE ANN. art. 3492 (delictual actions are subject to a liberative prescription of one year) and LA.CODE CIV. PROC. ANN. art. 683 (establishing a procedural mechanism to enforce the action of an unemancipated minor in the custody of DSS), dismissed the plaintiffs' petition for damages and pretermitted discussion of the other issues before it. Smith v. State ex rel. Dept. of Social Services and Educational and Treatment Council, Inc., XXXX-XXXX (La. App. 3 Cir. 12/28/01), 806 So.2d 126. The court of appeal also found that liberative prescription had not yet run against Mayes, ETC's employee, by virtue of LA. REV.STAT. ANN. 9:2800.9(A) which provides for a ten year prescriptive period against a person who has sexually abused a minor. It further noted that the continued viability of an action against Mayes would not affect ETC and DSS because the trial court had earlier determined that these entities could not be held vicariously liable for Mayes's intentional tortious actions and that judgment had not been appealed. Smith, 806 So.2d at 130. The two dissenting judges contended prescription was suspended during the time LW was in the custody of DSS or was timely brought under either LA.REV.STAT. ANN. § 9:2800(A) (action against a person for abuse of a minor that results in permanent injury is subject to a prescriptive period of 10 years) or LA. CIV.CODE ANN. art. 3496.1 (an action against a person for abuse of a minor is subject to a liberative period of 3 years).
*931 We granted SS's writ application to consider the correctness of the appellate courts' resolution of the issue of prescription. Smith v. State ex rel. Dept. of Social Services and Educational and Treatment Council, Inc., XXXX-XXXX (La.5/31/02), 816 So.2d 861.

LAW AND DISCUSSION
Liberative prescription is a mode of barring actions as a result of inaction for a period of time. LA. CIV.CODE ANN. art. 3447. It is also well accepted that the Legislature has the authority to set time limitations on legal actions. Lott v. Haley, 370 So.2d 521 (La.1979). Legislation also governs the renunciation, suspension or interruption of prescription. LA. CIV.CODE ANN. arts. 3449, 3462, 3464, 3469.
The general rule is that prescription runs against all persons unless an exception is legislatively established. LA. CIV.CODE ANN. arts. 3467; but see Comment (d) to LA. CIV.CODE ANN. art. 3467 ("Despite the clear language of Article 3512 of the Louisiana Civil Code of 1870, [the source provision for Article 3467 (1983)], courts have, in exceptional circumstances, resorted to the maxim contra non valentem non currit praescriptio."). As to minors, prescription also runs unless exception is established by legislation. LA. CIV.CODE ANN. art. 3468.[12]
The one year liberative prescriptive period for delictual actions begins to run from the day the injury or damage is sustained. LA. CIV.CODE ANN. art. 3492. Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Spott v. Otis Elevator Co., 601 So.2d 1355, 1361 (La.1992). However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502. Thus, when a petition reveals on its face that prescription has run, the plaintiff has the burden of showing the suspension, interruption or renunciation of prescription. Lima v. Schmidt, 595 So.2d 624, 628 (La.1992).
When evaluating which prescriptive period is applicable to a cause of action, courts first look to the character of the action disclosed in the pleadings. Starns v. Emmons, 538 So.2d 275, 277 (La.1989). In the present case, the plaintiffs seek recovery against DSS and ETC under state tort law provisions contained in LA. CIV.CODE ANN. art. 2315, as well as recovery against ETC under 42 U.S.C. § 1983. The general one year prescriptive period contained in LA. CIV.CODE ANN. art. 3492 governs plaintiffs' tort claims unless they can show an exception established by legislation. Likewise, prescription for § 1983 actions is determined by state limitations statutes, in determining the timeliness of a claim under civil rights provisions. Moore v. Tangipahoa Parish School Bd., 594 F.2d 489 (5th Cir.1979); McCoy v. City of Monroe, 32,521 (La.App. 2 Cir. 12/8/99), 747 So.2d 1234; writ denied, 00-1280 (La.3/30/01), 788 So.2d 441. Accordingly, such actions are also subject to the one year prescriptive period contained in LA. CIV.CODE ANN. art. 3492 unless plaintiffs can show an exception established by legislation.
In the present case, SS argues that the running of prescription as to the claims against DSS was suspended while the State had custody of LW. In support of her argument, SS relies upon LA. CIV.CODE *932 ANN. art. 3469[13] which provides:
Prescription is suspended as between: the spouses during marriage, parents and children during minority, tutors and minors during tutorship, and curators and interdicts during interdiciton, and caretakers and minors during minority.
A "caretaker" means a person legally obligated to provide or secure adequate care for a child, including a tutor, guardian, or legal custodian.
It is clear that DSS was LW's caretaker. DSS initiated juvenile court proceedings to remove LW from the custody of her parents, obtained a court judgment to that effect, and became legally obligated to secure or provide her with adequate care. Thus, prescription was suspended during the time LW was in DSS's custody. In the case sub judice, it is undisputed that the alleged rape occurred while LW was in DSS's custody. It is equally clear that prescription was suspended until May 3, 1996, when the juvenile court released LW's custody to her mother. Accordingly, given these clear facts, the suit was timely filed on December 23, 1996. Therefore, the court of appeal erred as a matter of law in finding LW's claim against DSS was barred by prescription.
SS further contends that the appellate court also erred in finding the action against ETC was time barred. In this regard, SS's argument is twofold: (1) LW had no one to protect her rights while she was in the custody of DSS; and (2) as further support of her argument, SS relies upon the provisions of LA. CIV.CODE ANN. art. 3496.1 which provides a three year prescriptive period for an action against a person for abuse of a minor.
From the outset, we find no merit to SS's contention that she was effectively barred from filing suit against ETC. After this Court's decision in Bouterie v. Crane, 616 So.2d 657 (La.1993), the Legislature amended LA.CODE CIV. PROC. ANN. art. 683 to rectify the procedural hiatus identified in that opinion as to who had the procedural capacity to enforce a legal right of an unemancipated minor in the custody of the state.[14] In particular, 1993 La. Acts 867 added paragraph D to that statute; it provides as follows:
D. Notwithstanding the provisions of Paragraph A, B, or C, an attorney appointed by the court having jurisdiction over an unemancipated minor who is in the legal custody of the Department of Social Services is the proper plaintiff to sue to enforce a right of an unemancipated minor. Upon application of the tutor or parent who would otherwise be the proper plaintiff to sue pursuant to Paragraph B or C, the court shall appoint or substitute as the proper plaintiff the best qualified among the tutor, parent or appointed attorney.
As a result of the amendment to art. 683, it is clear that the Legislature addressed the procedural hiatus identified in Bouterie. Accordingly, under that amendment, DSS may petition the court to have an attorney appointed to represent an unemancipated minor in its custody or the tutor or parent as identified in other sections of article 683 may ask the court to be substituted for the appointed attorney and the court can then appoint the best qualified among them. Thus, DSS could certainly have initiated this procedure on behalf of LW in an action against ETC.
*933 With regard to SS's alternative argument, the application of either LA. CIV. CODE ANN. art. 3496.1 or LA.REV.STAT. ANN. 9:2800.9(A), we find merit to her contention that LA.REV.STAT. ANN. 9:2800.9(A) is dispositive of the question.[15]
LA.REV.STAT. ANN. 9:2800.9(A) provides:
A. An action against a person for sexual abuse of a minor, or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring, is subject to a liberative prescriptive period of ten years. This prescription commences to run from the day the minor attains majority, and this prescription shall be suspended for all purposes until the minor reaches the age of majority. Abuse has the same meaning as provided in Louisiana Children's Code Article 603(1). This prescriptive period shall be subject to any exception of peremption provided by law.
LA. CH.CODE ANN. art. 603(1), which LA.REV. STAT. ANN. 9:2800.9(A) adopts as its definition for abuse, provides in pertinent part:
As used in this Title:
(1) "Abuse" means any one of the following acts which seriously endanger the physical, mental, or emotional health and safety of the child:
(a) The infliction, attempted infliction, or, as a result of inadequate supervision, the allowance of the infliction or attempted infliction of physical or mental injury upon the child by a parent or any other person.
From the outset, we note the appellate court found LA.REV.STAT. ANN. 9:2800.9(A) inapplicable because the trial court found that ETC was not vicariously liable for the conduct of its employee Mayes. Although that judgment may be final, we find the appellate court's reading of that statute too narrow. It has been alleged in the petition that LW was raped as a result of LW's exposure at Harbor House, an unfit and dangerous environment, to dangerous and immoral influences that irreparably injured her. In essence, we find this states a claim of inadequate supervision, one of the criteria that constitutes abuse under LA. CH.CODE ANN. art. 603(1). Thus, independent of ETC's freedom from vicarious liability for the alleged rape perpetrated by its employee, we find that LA.REV. STAT. ANN. 9:2800.9(A) is applicable for the alleged inadequate supervision by ETC.
In reaching this conclusion, we find the term "person" as used in LA.REV.STAT. ANN. 9:2800.9(A) applicable to a corporation such as ETC. As provided in LA. CIV.CODE ANN. art. 24:
There are two kinds of persons: natural persons and juridical persons.
A natural person is a human being. A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. The personality of a juridical person is distinct from that of its members.
Although the word "person" may have different meanings in law,[16] the general rule *934 is that when the word "person" is used in a statute, the statute applies to corporations as well as to natural persons if such corporations fall within the reason and purpose of the provisions of the statute. Department of Highways v. Lykes Bros. S.S. Co., 209 La. 381, 24 So.2d 623, 625 (1945). In the present case, we find that ETC falls within the reason and purpose of the provisions of LA.REV.STAT. ANN. 9:2800.9(A), i.e., it operated a shelter care facility that housed minors taken into DSS's custody and as such had supervisory obligations over minors. Under its contract with DSS, ETC agreed to "provide and administer a comprehensive program of care and treatment for each foster child placed in the facility." Moreover, under its written compact with DSS, ETC agreed to "be responsible and have the authority for the supervision of the performance of all persons involved in any service delivery and/or direct care to the ... foster child while the child is in the facility...." Accordingly, we find the appellate court erred as a matter of law in dismissing SS's action against ETC on an exception of prescription.

CONCLUSION
In summation, we find LW's claims against DSS were timely under LA. CIV. CODE ANN. art. 3469 which states that "prescription is suspended as between ... caretakers and minors during minority." We further find that LW's claims against ETC were timely under the provisions of LA.REV.STAT. ANN. 9:2800.9(A) which provides a ten year prescriptive period, commencing at majority, for claims of sexual abuse against minors as a result of alleged inadequate supervision.
Because the appellate court found the actions prescribed, it pretermitted the other issues DSS and ETC raised on appeal. Accordingly, we remand this matter to the appellate court for consideration of the remaining issues DSS and ETC raised in their respective appeals.

DECREE
For the foregoing reasons, we reverse the judgment of the Court of Appeal, Third Circuit, that found SS's action against DSS and ETC prescribed. We reinstate the judgment of the trial court which denied the peremptory exceptions of prescription of DSS and ETC, and remand this matter to the Court of Appeal, Third Circuit, to address the remaining issues DSS and ETC raised in their respective appeals.
REVERSED AND REMANDED.
NOTES
[1] Although the appellate court did not comply with the provisions of LA. SUP.CT. RULE XXXII, § 3, this opinion will nonetheless refer to the minor children and their parents by initials to lessen the minor children's exposure and thereby protect their identity.
[2] Although it appears the parents were divorced at this time, the facts do not fully develop their marital status. The record is also void of the location of the father. Nevertheless, it is clear no one appealed the adjudication which removed the children from parental custody and placed their custody with DSS.
[3] It is clear that LW was born on 9/27/80 and CW on 10/30/79. However, RW's date of birth does not appear in the record. From allegations made in the petition for damages regarding his age at the time of his suicide, see infra, it is deduced that he was approximately 15 years of age at the time of his adjudication as a child in need of care.
[4] As defined in the LA. CH.CODE ANN. art. 116(25) (1999), a shelter care facility is "a licensed, physically unrestricting public or private child caring facility, or a youth residential facility operated for runaway or homeless youth, which provides temporary care for children."
[5] In answer to interrogatories, ETC contends it did not have notification of LW's sexual activity with Mayes until September 3, 1996. Mayes was not named a defendant in the present action.
[6] In a peremptory exception of no right of action, DSS contended that although it released the physical custody of these children, it maintained legal custody of them. At Volume 1 of 1, page 137 of the transcript, SS entered a copy of this judgment into the record as Exhibit 2. At p. 35-36 of the record, the judgment states that the DSS was "released from custody and responsibility of CW and LW." Accordingly, there is nothing in this record to show that DSS only returned physical custody of the children to SS.
[7] Initially, SS's petition was met with a peremptory exception of no right of action. The basis of DSS's exception, namely, that SS had never been named the tutor of CW, LW, and BW, was remedied when SS obtained a judgment from the district court for Catahoula Parish naming her as the legal representative for her two minor daughters and her grandson. Thereafter, SS amended her petition for damages accordingly.
[8] The federal civil rights statute, 42 U.S.C. § 1983, provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....
[9] DSS did not join in that motion for partial summary judgment. We note, too, that ETC first presented this motion on February 22, 2000. At that time the trial court considered and denied this motion for partial summary judgment. ETC's appeal was dismissed because LA.CODE CIV. PROC. ANN. art.1915 does not authorize the certification of a judgment denying a motion for summary judgment as an appealable final judgment. S.S. v. State, 2000-953 (La.App. 3 Cir. 9/20/00), 771 So.2d 187. After the case was remanded to the trial court, ETC basically reurged its earlier motion.
[10] Although the transcript from this hearing and the court minutes clearly show the trial court's denial of these peremptory exceptions, the record is void of any formal judgment to that effect. The trial court's oral reasons indicate that it found prescription did not begin to run while LW was in state custody. It further found that LW was returned to her mother's care on May 3, 1996, and that suit was filed within a year of that date.
[11] The plaintiffs did not appeal the trial court's adverse ruling on whether ETC could be held vicariously liable for the intentional tort of its employee.
[12] As noted in Comment (b) to Article 3468 prior to 1982, prescription was suspended in favor of minors, unless exception was established.
[13] The appellate court decision is void of any reference to this codal article.
[14] Although this amendment cured a procedural problem that existed heretofore, it did not change the substantive provisions of LA. CIV.CODE ANN. art. 3469 as it relates to the suspension of prescription between minors and their caretakers.
[15] Because we find LA.REV.STAT. ANN. 9:2800.9(A) dispositive, we need not reach the applicability of LA. CIV.CODE ANN. art. 3496.1. Accordingly, because article 3496.1 does not define abuse, we express no opinion about whether it has the same meaning as provided in the Children's Code as determined in Hall v. Hebert, 1999-2781 (La.App. 1 Cir. 6/22/01), 798 So.2d 159, Woods v. St. Charles Parish School Bd., 99-962 (La.App. 5 Cir. 1/25/00), 750 So.2d 1168, and Dugas v. Durr, 96-744 (La.App. 3 Cir. 3/6/98), 707 So.2d 1368, writ denied, 98-0910 (La.5/15/98), 719 So.2d 464.
[16] See e.g.: International Primate Protection League v. Administrators of Tulane Educational Fund, 500 U.S. 72, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991) (holding that the term "person" does not include the sovereign); Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936) (holding that a corporation is not a citizen for purposes of the Fourteenth Amendment, but is a "person" with the equal protection clause of that amendment); Crowe v. Henry, 43 F.3d 198 (5 Cir.1995) (holding that a law firm is not a "person" under the RICO statute); State Through Dept. Of Public Safety and Corrections v. Louisiana Riverboat Gaming Com'n and Horseshoe Entertainment, 94-1872 (La.5/22/95), 655 So.2d 292 (holding that the Gaming Enforcement Division was not a "person" within the meaning of the Riverboat Gaming Act); Louisiana Ins. Guaranty Ass'n v. Bernard, 393 So.2d 764 (La.App. 1 Cir. 1980) (holding that the Louisiana Insurance Guaranty Association was a "person" insofar as the insurance code was concerned).