844 So.2d 65 (2003)
Robert M. JOHNSON, Joseph J. Johnson, Jr. Husband of/and Mary H. Johnson
v.
THE ROMAN CATHOLIC CHURCH FOR THE ARCHDIOCESE OF NEW ORLEANS; Sts. Peter and Paul Parish; Archbishop Frances B. Schulte; and Father Michael Fraser.
No. 2002 CA 0429.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
Writ Denied May 9, 2003.
*66 Harry T. Widmann, Metairie, Counsel for Appellant Robert M. Johnson, Joseph J. Johnson, Jr., and Mary H. Johnson.
Don M. Richard, Metairie, Counsel for Appellee Archdiocese of New Orleans, Sts. Peter/Paul Parish, and Archbishop Francis B. Schulte.
Henry W. Kinney, Tara E. Clement, New Orleans, Counsel for Appellee Father Michael Fraser.
Before: FOIL, McCLENDON, and KLINE,[1] JJ.
KLINE, J.
This is an appeal from a judgment maintaining the defendants' peremptory exception raising the objection of prescription. For the following reasons, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
According to plaintiffs' petition and appellate brief, Robert M. Johnson and his parents, Joseph and Mary Johnson, were members of Sts. Peter and Paul Church in Pearl River, Louisiana, in St. Tammany Parish. At the time of their membership, which had extended over several years, *67 Father Michael Fraser was the priest officiating at the church. In the late spring or early summer of the year 1991, when Robert was seventeen years old, his parents were having family difficulties, which included disagreements between Robert and his parents. Father Fraser offered to advise and assist the Johnson family members during their difficult times. Father Fraser offered to take Robert out of his family home to spend time at Father Fraser's home, owned by the church, because it would provide a cooling off period for the family. The petition alleges that Robert's parents accepted the offer and allowed Robert to spend at least one night, with permission to possibly spend additional time, with Father Fraser at his home. While at Father Fraser's home, Robert and his parents allege that Father Fraser sexually abused Robert. Robert was returned home the following morning.
On April 1, 1998, approximately seven years after the alleged incident, Robert and his parents filed suit against the Archdiocese of New Orleans and Sts. Peter and Paul Parish, Archbishop Francis B. Schulte, and Father Michael Fraser. On August 18, 1998, the Archdiocese and Sts. Peter and Paul Parish filed exceptions of prescription, no cause of action, and lack of subject matter jurisdiction. On August 27, 1998 Archbishop Schulte joined in these exceptions. Subsequently on November 9, 1998, Father Fraser filed exceptions of prescription and no cause of action. All of defendants' exceptions were heard on October 29, 2001. On November 2, 2001, the trial court issued a judgment granting the exception of prescription and pretermitting the remaining exceptions.
The basis for defendants' exception of prescription was that Robert and his parents filed their suit more than one year after the alleged sexual assault occurred. The parties focused their arguments on the meaning of "caretaker" in La. C.C. art. 3469, to which art. 3496.1 specifically refers, in an attempt to determine whether plaintiffs could avail themselves of the three-year prescriptive period and of the subsequently enacted ten-year prescriptive period. The trial court, in oral reasons for judgment, determined that Father Fraser was not a caretaker legally obligated to care for Robert.
The plaintiffs assign as error:
1. The Trial Court erred as a matter of law by concluding that Michael Fraser was not a caretaker and thus the claim of Robert Johnson was untimely.
2. The Court below erred as a matter of law by finding that contra non valentum did not apply to the claims of Joseph and Mary Johnson for intentional infliction of emotional distress and breach of fiduciary duty.

LAW AND DISCUSSION
PRESCRIPTIVE PERIODS
Robert M. Johnson was born February 21, 1974 and attained majority on February 21, 1992. The alleged tort or injury took place in the late spring or early summer of 1991 when he was seventeen years old. Louisiana Civil Code articles 3492, 3467, and 3468 provide as follows:
Art. 3492. Delictual actions
Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.
Art. 3467. Persons against whom prescription runs
*68 Prescription runs against all persons unless exception is established by legislation.
Art. 3468. Incompetents
Prescription runs against absent persons and incompetents, including minors and interdicts, unless exception is established by legislation.
The Legislature thus provided that a prescriptive period of one year is applicable and the action would have prescribed in the spring or early summer of 1992, unless there was a suspension of prescription and subsequent enactments which would allow the suit filed April 1, 1998 to be timely.
Louisiana Civil Code article 3469 did suspend prescription for certain classes of relationships including minors during their minority, to wit:
Art. 3469. Suspension of prescription
Prescription is suspended as between: the spouses during marriage, parents and children during minority, tutors and minors during tutorship, and curators and interdicts during interdiction, and caretakers and minors during minority.
A "caretaker" means a person legally obligated to provide or secure adequate care for a child, including a tutor, guardian, or legal custodian.
Acts 1982, No. 187, § 1, eff. Jan. 1, 1983. Amended by Acts 1988, No. 676, § 1. (Emphasis supplied.)
At the time of the alleged sexual assault in 1991, La. C.C. art. 3496.1 provided as follows:
An action by a person against a parent or caretaker for the infliction of abuse during minority is subject to a liberative prescription of three years. This prescription commences to run from the day the person attains majority. (Emphasis supplied.)
Louisiana Civil Code article 3496.1 was amended by Act 322 of 1992, and provides a three-year prescriptive period for an action against a person for "abuse of a minor."
An action against a person for abuse of a minor is subject to a liberative prescriptive period of three years. This prescription commences to run from the day the minor attains majority, and this prescription, for all purposes, shall be suspended until the minor reaches the age of majority. This prescriptive period shall be subject to any exception of preemption provided by law. (Emphasis supplied.)
In 1993, La. C.C. art. 3498.1 was enacted, effective June 25, 1993, to provide for a ten-year prescriptive period for an action against a person for "sexual abuse of a minor." Louisiana Civil Code article 3498.1, redesignated as La. R.S. 9:2800.9 by the Louisiana State Law Institute, is also pertinent:
A. An action against a person for sexual abuse of a minor, or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring, is subject to a liberative prescriptive period of ten years. This prescription commences to run from the day the minor attains majority, and this prescription shall be suspended for all purposes until the minor reaches the age of majority. Abuse has the same meaning as provided in Louisiana Children's Code Article 603(1). This prescriptive period shall be subject to any exception of preemption provided by law. (Emphasis supplied.)
Defendants contend that, at the time of the alleged act of sexual abuse, the general liberative prescriptive period of one year was in effect. It was extended to three *69 years by virtue of La. C.C. art. 3496.1, but only in the case of "an action by a person against a parent or caretaker for infliction of abuse during minority." Defendants argue that Michael Fraser was not a caretaker of Robert on that given night and, as a result, Robert's action was subject to a liberative prescriptive period of one year, and therefore was prescribed at the time of filing the instant action.
Plaintiffs contend that, within the framework of legislative enactments, the alleged tort of 1991 could still be viable under a 1998 filing because the tortfeasor was a caretaker and the three-year prescriptive period was applicable under La. C.C. art. 3496.1. Plaintiffs reason that the three-year period from attainment of majority had not run when the Legislature enacted, in 1993, by amendment to La. C.C. art. 3496.1, a ten-year prescriptive period for actions against persons for sexual abuse of a minor. The ten-year period would then be retroactive to causes of action that were not then prescribed.
To reiterate, the viability of this cause of action depends upon whether Father Fraser can be classified or determined to be a caretaker. If he were not a caretaker, the three-year period would not apply and the cause of action would have prescribed prior to the 1993 amendment.[2]
CARETAKER STATUS
Louisiana Civil Code article 3469 affords us a definition of "caretaker" as "a person legally obligated to provide or secure adequate care for a child, including a tutor, guardian, or legal custodian."
The trial court concluded that "Fraser does not meet the definition of a caretaker.... He has no legal obligation to care for the plaintiff, Robert Johnson, nor was he legally recognized as the plaintiff's tutor or guardian. Additionally, Father Fraser was not the plaintiff's legal custodian." The trial court concluded that the definition of "caretaker" contemplates a type of permanency to the relationship, which did not exist in this situation.
It is the present task to examine the nature of the relationship between the minor and the alleged tortfeasor and, then, to determine whether a caretaker relationship existed as plaintiffs contend. In making that inquiry, we must be mindful not only of the legislative enactment of the definition in La. C.C. art. 3469, but also of the general rules of interpretation provided in the La. C.C. arts. 9-13. In accordance, we charge ourselves that the words of a law must be given their generally prevailing meaning and that when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. We must maintain the integrity of the "caretaker" concept and use caution in broadening a "caregiver" relationship into a "caretaker" relationship.
Society abhors the abuse of a minor by anyone, and more particularly by one in authority over a minor. In response to a social evil, it is acknowledged that the Legislature did, in 1993, extend the prescriptive period to ten years from the minor's attainment of majority for the causes of action involving sexual abuse of minors *70 and physical abuse resulting in permanent impairment. The Legislature has thus moved from one-year to three-year to ten-year prescriptive periods for certain abuses of a minor. Additionally, the classification of the authority has been expanded from "parent" to "parent or caretaker" to "a person." There is a manifest legislative intent to consistently broaden the opportunities for minors to sue their abusers whenever and by whomever the abuse occurs. See L.V. v. Liberto, 612 So.2d 812, 814 n. 2 (La.App. 1 Cir.1992). In addition to the codal definition and rules of interpretation, we have afforded jurisprudential guidance relative to the definition of "caretaker" status.
This court expressed, in L.V. v. Liberto, 612 So.2d at 815 that the definition of "caretaker" cannot depend alone upon determining how one is legally obligated to the minor. It must also depend upon the nature of the relationship between the minor and the caretaker.
To reiterate, La. C.C. art. 3469 defines "caretaker" as a person legally obligated to provide adequate care for a child, including a tutor, guardian, or legal custodian. In seeking a definition of "caretaker", this court in L.V. v. Liberto, 612 So.2d at 815, concluded that a grammatical reading of the entire sentence indicates that the "including" clause of La. C.C. art. 3469 is an illustrative list. The court, reciting the Civil Code articles on "Obligations in General," further found that "legally obligated" was not necessarily confined to a court order. Louisiana Civil Code article 1756 states that an obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee.
We must inquire about the attributes of a "caretaker" relationship. The status of a "caretaker" necessarily entails an entrustment. It is the yielding of some responsibility and the accepting of that responsibility. That transfer of responsibility may be one legally mandated such as found in curatorships, tutorships, or foster-parent relationships, but there may be volunteer transfers that characterize the entrustment. A usual attribute of a "caretaker" relationship involves an obligation to provide sustenance or adequate shelter and care in a custodial setting for a period of time. The trial court, in denying a finding of caretaker status, was concerned not only about a lack of legal relationship, but also the fact that the definition of a "caretaker" contemplates a type of permanency to such a relationship. We are mindful that caretaker status is more encompassing than the relationship between a teacher or school and a child in a typical nonresidential setting. See L.V. v. Liberto, 612 So.2d at 815.
In this case, there was an entrustment to Father Fraser for the care of the minor for at least one night, and perhaps more, because of the difficulties in the parent's home. The length of the authorized stay may be in dispute, but it is undisputed that the day following the alleged abuse, the minor was returned to his parents. This entrustment was to be, not at catechism class, at the church proper, or in an educational setting, but in a custodial setting in the privacy of Father Fraser's home.
A significant concern is the temporal aspect of the entrustment in classifying the relationship between the minor and the alleged tortfeasor. Defendants contend that an overnight visit in the home of the alleged tortfeasor is contrary to a reasoned definition of "caretaker" status and would lead to absurd and undesirable social consequences.
However, the temporal aspect of the entrustment and the status of the parties *71 should be examined together. It is apparent that there existed a special relationship among the minor, his parents, and their priest. The minor and his parents were in need, and their long-time spiritual advisor and confidant was one on whom they depended and relied. The temporal aspect of the overnight stay must be considered in light of a longer sustained trust and care undertaken by Father Fraser to this minor and his family. The shelter and food provided in this one night in privacy is only one important aspect of the relationship between the parties. Father Fraser's spiritual guidance and care assumed the authority of the Church and Deity. It was the very reason for the entrustment, but it provided the custodial opportunity for the alleged abuse.
An authority figure and a concomitant dependency are significant factors found in "caretaker" relationships. If "caretaker" status requires an extended period of providing physical shelter and physical care, then Father Fraser is not a caretaker. If long-term relationship of providing emotional and spiritual guidance, which leads to an entrustment for a limited time of shelter and physical care, then we may consider Father Fraser as an obligor and a caretaker. It is not known whether the custodial entrustment would have been longer, but for, the alleged abusive incidents on the first night.
There is another aspect of this relationship that should be considered; the sustenance provided by Father Fraser for the spiritual life and emotional well being of this family has the real capacity to create a dependency. A rationale for the increase of a prescriptive period from one to three and then to ten years is that those who become dependent upon caretakers and others experience a reluctance to disclose the abuse inflicted by those on whom they are dependent.
In essence, then, there are significant compelling attributes of a "caretaker" status found in the relationship between Father Fraser and this minor. The spiritual nourishment and emotional care was not temporary, but spanned the years. It was an encompassing relationship that led to a custodial entrustment, for a limited time, at Father Fraser's home, which afforded him temporary physical authority and responsibility as well. The nature of the relationship created for the minor a dependency upon an authority figure. To reiterate, it is this very kind of dependency that makes minors, who are abused, either reluctant or emotionally incapable of disclosing the abuse. The broadened interpretation of "caretakers," the extension of the prescriptive periods, and the social purpose reflected in the legislation and jurisprudence are compatible with a finding that Father Fraser was a caretaker under the totality of these particular circumstances.[3]
It is then concluded that Robert M. Johnson's cause of action is not prescribed.
THE PARENTS CAUSE OF ACTION
The parents' derivative claims of loss of consortium likewise have not prescribed. The remaining claims of the parents are remanded to the trial court for determination of the remaining exceptions and issues related thereto. This court will not preclude the applicability of contra non valentum prior to a determination of the facts.

*72 CONCLUSION
The judgment of the trial court granting defendants' exception of prescription is reversed as it pertains to Robert Johnson, reversed as it pertains to the parents, and remanded for further proceedings. Costs of this appeal are assessed against Father Michael Fraser, Archbishop Schulte, and the Archdiocese of New Orleans, Sts. Peter and Paul Parish.
REVERSED AND REMANDED.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] When law modifies duration of a prescription, either to lengthen it or shorten it, prescriptions already accrued are not disturbed by it, but those which are running are affected by the change. The Legislature is without the authority to revive a prescribed claim. See Elevating Boats, Inc. v. St. Bernard Parish, XXXX-XXXX, p. 14 (La.9/5/01), 795 So.2d 1153, 1164; Bouterie v. Crane, 616 So.2d 657, 664 n. 15 (La.1993); Hall v. Hall, 516 So.2d 119, 120 (La.1987).
[3] This consideration of the totality of the relationship in this cause does not mean that ministers, priests, teachers, counselors, and advisors in their usual particular relationships with minors are to be deemed "caretakers," nor does it mean that chaperons for an overnight social visit by minors are reasonably classified as "caretakers."