857 So.2d 555 (2003)
Michael DOE and Davin Doe
v.
Bob JONES and Jane Jones
No. 2002 CA 2581.
Court of Appeal of Louisiana, First Circuit.
September 26, 2003.
*556 R. Bruce Macmurdo, Baton Rouge, Counsel for Plaintiffs/Appellants Michael Doe and Davin Doe.
Donald R. Smith, Baton Rouge, Counsel for Defendant/Appellee Nina Henderson Smith.
Michael P. Colvin, Baton Rouge, Counsel for Defendant/Appellee State Farm Fire & Casualty Company.
Before: FOIL, FITZSIMMONS, and GAIDRY, JJ.
GAIDRY, J.
This is an appeal of a summary judgment holding that the plaintiffs' claims against their grandmother and her liability insurer for her alleged negligent supervision resulting in sexual abuse are prescribed. For the reasons expressed below, we reverse the summary judgment in the defendants' favor and remand the case to the trial court for further proceedings.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Davin Henderson and Michael Henderson (plaintiffs) are brothers and the grandsons of Nina Henderson Smith, the wife of Bobby Smith.[1] They filed suit for damages against Mr. and Mrs. Smith and Mrs. Smith's homeowner's insurer, State Farm Fire and Casualty Company (State Farm). In their petition, plaintiffs alleged that Mr. Smith, their step-grandfather, sexually abused them from the time each was about seven years old until each was about fifteen years old. They further alleged that Mrs. Smith was negligent in failing to warn them and their parents of Mr. Smith's pedophilic tendencies, in permitting Mr. Smith to be alone with them, and in failing to properly supervise them while guests at her home.
It is undisputed that Mr. Smith sexually abused the plaintiffs as minors and pled guilty to criminal charges arising from that abuse. Davin Henderson claims that the last incident of abuse upon him occurred *557 around Christmas, 1991. Michael Henderson claims he was last abused by Mr. Smith during the summer of 1994. Davin Henderson reached the age of majority on August 1, 1994, and Michael Henderson became a major on July 17, 1996. Their joint petition was filed on March 28, 2001, well over three years after each attained the age of eighteen.
Mrs. Smith and State Farm separately answered the petition, denying any fault on her part and pleading the prescription of plaintiffs' claims. State Farm also alleged that due to their character, the claims asserted were not covered under its policy, and that some of the alleged acts of abuse did not occur within any applicable period of coverage provided.
After issue was joined, State Farm filed a motion for partial summary judgment, seeking its dismissal on the grounds that plaintiffs' claims against it, as insurer of Mrs. Smith, were prescribed. Mrs. Smith filed a motion for summary judgment seeking her dismissal from the suit on the same grounds. Both motions were heard on March 11, 2002, and the trial court granted both, rendering its written reasons on March 14, 2002. The judgment was signed on May 3, 2002. From the judgment granting summary judgment in favor of Mrs. Smith and partial summary judgment in favor of State Farm, plaintiffs instituted this appeal.[2]

ASSIGNMENTS OF ERROR
Plaintiffs assign as error the trial court's decision that La. C.C. art. 3496.1 provides the applicable prescriptive period of three years after majority relating to their claims, to the exclusion of La. R.S. 9:2800.9's ten-year prescriptive period.

STANDARD OF REVIEW
Although typically asserted through the procedural vehicle of the peremptory exception, the defense of prescription may also properly be raised by motion for summary judgment.[3] As defendants chose to *558 use the latter procedural device, our review of each summary judgment at issue here must be a de novo review based upon the evidence presented in the trial court, using the same criteria used by the trial court in deciding whether summary judgment is appropriate. Simmons v. Berry, 98-0660, p. 4 (La.App. 1st Cir.12/22/00), 779 So.2d 910, 913-14.

LAW AND DISCUSSION
The summary judgment procedure is expressly favored in the law, and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The mover has the burden of proof that he is entitled to summary judgment. If the mover would also bear the burden of proof at trial on the matter at issue, he must negate all essential elements of the adverse party's claim, action, or defense. La. C.C.P. art. 966(C)(2). Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. Willis v. Medders, 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049,1050.
Prescription runs against all persons, including minors, unless exception is established by legislation. La. C.C. arts. 3467, 3468. Delictual actions are generally subject to a liberative prescription of one year, commencing from the day injury or damage is sustained. La. C.C. art. 3492. However, the legislature has established a number of exceptions to the general one-year prescriptive period, among them La. C.C. art. 3496.1. That article, as amended by Acts 1992, No. 322, effective August 21, 1992, presently provides:
An action against a person for abuse of a minor is subject to a liberative prescriptive period of three years. This prescription commences to run from the day the minor attains majority, and this prescription, for all purposes, shall be suspended until the minor reaches the age of majority. This prescriptive period shall be subject to any exception of peremption provided by law.
Significantly, the 1992 amendment of La. C.C. art. 3496.1 expanded the category of defendants subject to its prescriptive period to any "person," from a prior wording of "parent or caretaker."[4] The term "abuse" is not defined in the article. However, this court adopted the definition of "abuse" set forth in La. Ch.C. art. 603(1) for purposes of La. C.C. art. 3496.1 in the case of Hall v. Hebert, 99-2781, p. 6 (La. App. 1st Cir.6/22/01), 798 So.2d 159, 163, citing the earlier decision of Dugas v. Durr, 96-744 (La.App. 3rd Cir.3/6/98), 707 So.2d 1368. There, we agreed with the Dugas court that a claim of "inadequate supervision" resulting in sexual abuse was subject to the three-year prescriptive period of La. C.C. art. 3496.1.
Louisiana Children's Code article 603(1) provides a definition of "abuse" for purposes of determining whether a minor is a "child in need of care":
*559 (1) "Abuse" means any one of the following acts which seriously endanger the physical, mental, or emotional health and safety of the child:
(a) The infliction, attempted infliction, or, as a result of inadequate supervision, the allowance of the infliction or attempted infliction of physical or mental injury upon the child by a parent or any other person.

(b) The exploitation or overwork of a child by a parent or other person.
(c) The involvement of the child in any sexual act with a parent or any other person, or the aiding or toleration by the parent or the caretaker of the child's sexual involvement with any other person or of the child's involvement in pornographic displays, or any other involvement of a child in sexual activity constituting a crime under the laws of this state. (Our emphasis.)
This case presents us with the straightforward issue of whether La. 9:2800.9 operates to maintain the viability of plaintiffs' claims against their grandmother, which were asserted well after the extended prescriptive period of majority plus three years set forth in La. C.C. art. 3496.1. If La. R.S. 9:2800.9 does not apply here, plaintiffs' claims are clearly prescribed under either La. C.C. art. 3492 or 3496.1.
In pertinent part, La. 9:2800.9(A) provides:
An action against a person for sexual abuse of a minor, or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring, is subject to a liberative prescriptive period of ten years. This prescription commences to run from the day the minor attains majority, and this prescription shall be suspended for all purposes until the minor reaches the age of majority. Abuse has the same meaning as provided in Louisiana Children's Code Article 603(1). This prescriptive period shall be subject to any exception of peremption provided by law.
Defendants argue that the ten-year period of liberative prescription of La. R.S. 9:2800.9 does not apply to a claim for abuse based upon a noncustodial adult's negligent supervision, but that any such claim is instead governed by La. C.C. art. 3496.1, citing Dugas and Hall. They contend that the courts in those cases specifically rejected the applicability of La. R.S. 9:2800.9 to those claims against overnight social hosts to whose supervision the minor victims were entrusted. We disagree with defendants' interpretation of the holdings in those cases. The Louisiana Third Circuit Court of Appeal in Dugas considered La. R.S. 9:2800.9 as a statute in pari materia with La. C.C. art. 3496.1, but did not actually reach the issue of its concurrent applicability, as the latter was held applicable to maintain the plaintiffs' claim. In Hall, we simply "question[ed]" the applicability of La. R.S. 9:2800.9, suggesting that certain undescribed requirements were not met. Hall, 99-2781 at p. 5 n. 4, 798 So.2d at 162 n. 4. As we held in Hall that the plaintiffs' claim was not prescribed because of the applicability of La. C.C. art. 3496.1, that discussion was clearly only dictum. Accordingly, neither case stands for the proposition that La. C.C. art. 3496.1 applies to the exclusion of La. R.S. 9:2800.9 regarding a claim against a non-parent or noncustodial person for negligent supervision resulting in abuse.
Defendants further argue that La. Ch.C. art. 603(1)(c) specifically addresses abuse in the form of a minor's involvement in a sexual act or the "aiding or toleration by a parent or caretaker of the child's sexual involvement," thereby implicitly excluding that form of abuse from that addressed in *560 Section 1(a) of the statute, which in turn limits claims for "inadequate supervision" to those for "physical or mental injury." They contend that because Section 1(c) is specifically directed to sexual abuse, the "specific-general" rule of statutory construction requires that its terms must prevail over the more general terms of Section 1(a). See LeBreton v. Rabito, 97-2221, p. 7 (La.7/8/98), 714 So.2d 1226,1229. We disagree. Sections 1(a) and 1(c) are complementary, not conflicting. An argument identical to defendants' was expressly rejected by the third circuit in Dugas, 96-744 at pp. 8-9, 707 So.2d at 1371-72, which observed that "[t]he fact that abuse is sexual does not diminish the fact that it is physical and likely mental abuse as well." Such interpretation accords with the fundamental object of comprehensive protection of children from both active abuse and passive neglect resulting in abuse. See La. Ch.C. art. 601. As La. R.S. 9:2800.9 expressly adopts La. Ch.C. art. 603(1)'s definition of "abuse," a narrower interpretation of that definition for its purposes than that recognized by our courts for purposes of La. C.C. art. 3496.1 would be absurd.
Subsequent to the perfection of this appeal, the Louisiana Supreme Court issued its opinion in SS v. State, Department of Social Services, 02-0831 (La.12/4/02), 831 So.2d 926. The plaintiff brought suit against the Louisiana Department of Social Services and a contractor operating a private shelter care facility for her minor daughter's sexual abuse. The daughter had been placed in the Department's care, and the Department assigned her to the contractor's facility. While in the care of that facility, the daughter ran away, and engaged in non-consensual sexual intercourse with a facility employee. The court concluded, in summary, that La. R.S. 9:2800.9(A) "provides a ten year prescriptive period, commencing at majority, for claims of sexual abuse against minors as a result of alleged inadequate supervision." SS, 02-0831 at p. 12, 831 So.2d at 934. While this broad language would seem to be dispositive of the issue at hand, defendants nevertheless alternatively urge that other language from that opinion in fact supports their contention that La. R.S. 9:2800.9 applies only to negligent or inadequate supervision by a person having the status of caretaker, which they contend is equivalent to that of a legal custodian. We cannot accept the proposition that "caretaker" and "legal custodian" are synonymous. While it is true that the Louisiana Supreme Court in SS found that the Department was the minor's "caretaker" by reason of its legal custody of her, and that La. C.C. art. 3496.1 applied to the claim against it, it did not find the contractor to be a legal custodian or a "caretaker." It held that La. R.S. 9:2800.9 applied to the contractor because it operated the facility at which the minor was "housed" and had "supervisory obligations" over her. SS, 02-0831 at p. 11, 831 So.2d at 934.
We are required to strictly construe the language of La. R.S. 9:2800.9 "against prescription and in favor of the claim sought to be extinguished by it." Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206, 211. Because of the broad definition of "abuse" contained in La. Ch.C. art. 603(1)(a), as incorporated by reference in La. R.S. 9:2800.9, this principle of construction must control over the "specific-general" rule of construction.[5] *561 Applying that standard of interpretation, we conclude, as did the Supreme Court in SS, that plaintiffs' claims are not prescribed.
Our recent decision in Johnson v. Roman Catholic Church for the Archdiocese of New Orleans, 02-0429 (La.App. 1st Cir.2/14/03), 844 So.2d 65, writs denied, 03-0730, 843 So.2d 401, 03-0778 (La.5/9/03), 843 So.2d 406, supports the result here. There, we thoroughly reviewed the legislative and jurisprudential background of the prescriptive statutes at issue. The plaintiffs, parents and a major son, alleged that the defendant, a Catholic priest and the family's spiritual advisor, sexually abused the son (then a minor) on an overnight visit. The issue of the defendant's status as a "caretaker" under La. C.C. art. 3496.1 was crucial to the viability of the plaintiffs' claim because it was governed by the pre-1992 version of that article, and La. 9:2800.9 did not become effective until 1993. The act of abuse occurred in 1991, and the plaintiffs' son attained majority in 1992, but suit was not filed until 1998. Thus, unless the defendant was a "caretaker" against whom prescription was suspended under La. C.C. art. 3469, and a "caretaker" for purpose of the pre-1992 version of La. C.C. art. 3496.1, one-year prescription had already accrued in favor of the defendant prior to the 1993 enactment of La. R.S. 9:2800.9's ten-year prescriptive period, and the subsequent legislation could not operate to retroactively revive the cause of action and deprive the defendant of a vested right. If the defendant was a "caretaker," then the three-year period after majority would serve to maintain the viability of the cause of action through the 1993 enactment of La. R.S. 9:2800.9, which in turn would further extend the prescriptive date on the unprescribed cause of action for another seven years. Johnson, 02-0429 at p. 5, 844 So.2d at 68-9.
In Johnson, we held that a "caretaker" relationship is not dependent upon a legal obligation founded upon a court order, such as those of tutor, guardian, or legal custodian. The attributes of such a relationship were described as follows:
The status of a "caretaker" necessarily entails an entrustment. It is the yielding of some responsibility and the accepting of that responsibility. That transfer of responsibility may be one legally mandated such as found in curatorships, tutorships, or foster-parent relationships, but there may be volunteer transfers that characterize the entrustment. A usual attribute of a "caretaker" relationship involves an obligation to provide sustenance or adequate shelter and care in a custodial setting for a period of time....

* * *
A significant concern is the temporal aspect of the entrustment in classifying the relationship between the minor and the alleged tortfeasor....
* * *
However, the temporal aspect of the entrustment and the status of the parties should be examined together....
* * *
An authority figure and a concomitant dependency are significant factors found in "caretaker" relationships.... *562 Johnson, 02-0429 at pp. 7, 8, 844 So.2d at 70-71. We held that the long-term, special relationship between the plaintiffs and the defendant warranted a finding of "caretaker" status, despite the "limited time" of entrustment (one night) and the "temporary" nature of the physical authority and responsibility transferred. Johnson, 02-0429 at p. 9, 844 So.2d at 71.
We note that the legislature could easily have modified the phrase "inadequate supervision" in La. Ch.C. art. 603(1)(a) by the addition of the phrase "by the parent or the caretaker," as it modified the phrase "aiding or toleration" in Section (1)(c) of the article. Its failure to so limit Section 1(a) lends support to an interpretation that persons other than parents or caretakers might be guilty of "abuse" of a minor through their inadequate supervision of the minor or the direct perpetrator.[6] But we need not decide that narrow issue here. Based upon the undisputed evidence in the depositions, we conclude that Mrs. Smith was in fact a "caretaker," and as such owed the duty to exercise reasonable care to adequately supervise and protect the minor grandchildren in her charge from sexual abuse. The evidence in the record shows that plaintiffs were frequent visitors to their grandmother's home, and were often entrusted by their parents to the care of Mr. and Mrs. Smith overnight. There was unquestionably a much stronger type of "encompassing relationship" with "custodial entrustment, for a limited time," with "temporary physical authority and responsibility" than was present in Johnson. See Johnson, 02-0429 at p. 9, 844 So.2d at 71. Thus, Mrs. Smith clearly falls within the Johnson criteria for "caretaker" status for purposes of La. C.C. art. 3469.[7]
Because of the magnitude of the issue here addressed, we briefly digress. We must point out that these prescriptive statutes and La. Ch.C. art. 603(1) themselves do not create a substantive delictual cause of action for "passive" abuse of a minor through inadequate supervision; the existence of such a cause of action in any given case is governed by the general principles of La. C.C. arts. 2315, 2315.7, 2316, and the general principles of tort law embodied in our jurisprudence.[8] Considerations of the magnitude of the risk, the scope of any *563 duty undertaken, foreseeability, and others inherent in the duty-risk analysis must still be taken into account.
Our law clearly contemplates that the "person" against whom a claim for negligent supervision resulting in a minor's abuse is asserted must have substantial "supervisory obligations" over the minor. And we emphasize that La. R.S. 9:2800.9 presupposes that the "person" against whom the claim of inadequate supervision resulting in sexual abuse or serious permanent injury is leveled in fact owed a legal duty and breached that duty, resulting in injury to the minor. We need not decide today whether all persons owing such duties are "caretakers" within the meaning of La. C.C. art. 3469 or La. Ch.C. 603(1)(c), as Mrs. Smith clearly was one under the facts before us. Plaintiffs' allegations that their grandmother knew of her husband's pedophilic tendencies, failed to warn them or their parents of those tendencies, allowed plaintiffs to be alone with him, and failed to supervise plaintiffs properly while under her care, as supported by the depositions in the record, clearly state causes of action which are governed by La. R.S. 9:2800.9.

DECREE
The judgment of the trial court in favor of the defendants, Nina Henderson Smith and State Farm Fire and Casualty Company, and against the plaintiffs, Davin Henderson and Michael Henderson, is reversed, and this case is remanded to the trial court for further proceedings. All costs of this appeal are assessed to the defendants.
REVERSED AND REMANDED.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, Judge, concurring with reasons.
I respectfully concur in the result. However, I wish to voice concern over the attribution of inter-relational aspects of the statute voiced in the majority opinion's interpretation of La. Ch.C. 603(1)(a) and (c).
The reference to `caretaker' in subsection (c) of La. Ch.C. 603(1) is not contained in subsection (a). Thus, a policy question of just how far one would wish to intermingle these two separate parts of the same statute is presented. I would respectfully submit that by the very language of the statute, `caretaker' is justly limited in application to only subsection (c). To do otherwise would place the term in danger of even greater extension of meaning than has already been done in the majority opinion. By no rational means can the term `caretaker' be expanded to any and all persons. What is of concern is that the frequently implored construction of who is a `caretaker' will be relegated to a `case by case' determination. This approach gives no sense of predictability to the law.
It is respectfully advanced that this case could be decided solely on the language of subsection (c). In this regard, the grandmother was a `caretaker' in the most elemental sense of the word. As is pointed out in the majority opinion, the undisputed evidence demonstrated that the grandmother possessed "supervisory obligations." See SS v. State, Department of Social Services, XXXX-XXXX, p. 11 (La.12/4/02), 831 So.2d 926, 934. Moreover, this first circuit has recently held that the nomenclature of `caretaker' depends *564 on the "temporal aspect of the entrustment" and a dependent relationship. Johnson v. Roman Catholic Church for the Archdiocese of New Orleans, XXXX-XXXX, pp. 7-9 (La.App. 1 Cir. 2/14/03), 844 So.2d 65, 70-71.
NOTES
[1] The original petition used pseudonyms for the parties, pursuant to the requirements of La. R.S. 9:2800.9(D). By supplemental and amending petition, the parties' actual names were substituted with leave of court.
[2] Although the trial court's partial summary judgment in favor of State Farm is properly designated as a final, appealable judgment under La. C.C.P. art. 1915(B), the record does not contain the trial court's express determination as to the propriety of such designation. Our de novo review of the record demonstrates that there are substantial factors militating in favor of the conclusion that there is no just reason to delay the appeal of the partial summary judgment. If that judgment stood alone for purposes of appeal, the proper course would be to remand the case to the trial court for supplementation of the record with its reasons for the designation. Shapiro v. L & L Fetter, Inc., 02-0933, p. 7 (La. App. 1st Cir.2/14/03), 845 So.2d 406, 410-11. However, as the other summary judgment in favor of Mrs. Smith is clearly a final, appealable judgment under La. C.C.P. art. 1915(A), and involves the same issue, we may properly consider the appeal of the partial summary judgment in favor of State Farm for purposes of judicial economy, without the need for remand.
[3] The procedural propriety of a motion for summary judgment to assert a plea of prescription has never been seriously questioned by our courts and in fact has been expressly approved, especially when there is no dispute as to the facts upon which the defense is based. Scott v. Butler Brothers Furniture Company of Baker, Inc., 315 So.2d 809, 810 (La.App. 1st Cir.1975); Lasseigne v. Earl K. Long Hospital, 316 So.2d 761, 762 (La.App. 1st Cir.1975). In the typical case where prescription is raised as a defense, however, the defendant will ordinarily use the peremptory exception as the procedural vehicle for pre-trial determination of the issue, for the practical reason that his burden is a preponderance of the evidence, and he need not exclude all genuine issues as to material fact. See Labbe Service Garage, Inc. v. LBM Distributors, Inc., 94-1043, pp. 9-10 (La.App. 3rd Cir.2/1/95), 650 So.2d 824, 829. Where, as here, the disputed issue is one of law rather than material fact, the use of summary judgment is particularly appropriate and probably preferable to the use of the peremptory exception from an evidentiary standpoint.
[4] The prior version of the article adopted by reference the definition of "caretaker" contained in La. C.C. art. 3469, which provides that prescription is suspended between "caretakers and minors during minority." "Caretaker" is defined therein as "a person legally obligated to provide or secure adequate care for a child, including a tutor, guardian, or legal custodian." La. C.C. art. 3469.
[5] The "specific-general" rule of construction is only applicable if the two statutes in pari materia cannot be harmonized to eliminate any conflict. It is questionable whether this rule is applicable to different sections of the same statute; however, we need not decide this question today, as Sections 1(a) and 1(b) can be harmonized by adopting an interpretation which considers the beneficent purposes of both La. Ch.C. art. 601 and La. R.S. 9:2800.9 and the strong policy favoring strict construction of laws limiting parties' access to legal redress. Where a part of a statute is to be interpreted, it should be read in connection with the rest of the statute and all other laws on the same subject. Theriot v. Midland Risk Insurance Company, 95-2895, p. 3 (La.5/20/97), 694 So.2d 184, 186.
[6] As we observed in Johnson:

Society abhors the abuse of a minor by anyone, and more particularly by one in authority over a minor.... Additionally, the classification of the authority has been expanded from "parent" to "parent or caretaker" to "a person." There is a manifest legislative intent to consistently broaden the opportunities for minors to sue their abusers whenever and by whomever the abuse occurs. (Our emphasis.)
Johnson, 02-0429 at p. 6, 844 So.2d at 69-70.
[7] As in Johnson, however, we hasten to point out that our holding that Mrs. Smith was a "caretaker" given the totality of the circumstances of this case does not mean that grandparents, other relatives, family friends, or any other "chaperons for an overnight social visit by minors are reasonably classified as `caretakers' " at all times and under all circumstances. Johnson, 02-0429 at p. 9 n. 3, 844 So.2d at 71 n. 3. And our prior citation of the Dugas opinion herein should not be read as blanket approval of the existence of a valid cause of action for "inadequate supervision" in every case involving an isolated overnight sleepover of young friends. Each case must be analyzed on its own individual facts under the duty-risk analysis as to whether a cause of action exists. See, e.g., Lee v. Taylor, 00-1361 (La.App. 1st Cir.12/15/00), 808 So.2d 407.
[8] Thus, the incorporation by reference of the definition of "abuse" of La. Ch.C. art. 603(1) in La. R.S. 9:2800.9 does not imply, for example, that every instance of transient forgetfulness during which "attempted infliction" of sexual abuse on a minor occurs necessarily results in an actionable tort against an adult or competent entity with some supervisory duty. The nature of the legal obligation and physical custody supporting "caretaker" status "is more encompassing than, for example, the relationship between a teacher or school or a child in a typical non-residential setting." L.V. v. Liberto, 612 So.2d 812, 815 (La.App. 1st Cir.1992).