934 So.2d 722 (2006)
Basil ADAMS
v.
Richard L. STALDER, State of Louisiana, Through the Department of Public Safety and Corrections, Dixon Correctional Institute, Warden James M. Leblanc, SGT. Wallace Cook, MSGT. Helen Braswell, Unknown DCI Emergency Medical Coordinators, Arron Jones, and Other Unknown Employees of the Dixon Correctional Institute.
No. 2006 CW 0051.
Court of Appeal of Louisiana, First Circuit.
March 17, 2006.
*723 Charles C. Foti, Jr., Rodney A. Ramsey, Counsel for Relator, Louisiana Department of Public Safety and Corrections.
J. Christopher Alexander, Sr., Counsel for Respondent, Basil Adams.
Before: KUHN, GUIDRY, and PETTIGREW, JJ.
PER CURIAM.
On August 2, 2002, Basil Adams ("Adams"), an inmate at Dixon Correctional Institute ("DCI"), was struck on the head with a hoe by fellow inmate Aaron Jones during work detail.[1] As a result of injuries sustained in the attack, Adams filed a claim for administrative relief in accordance with the Corrections Administrative Remedy Procedure (CARP), La. R.S. 15:1171 et seq. There is, however, some dispute as to the actual date that the claim for administrative relief was first filed. Adams contends that he filed the claim on August 2, 2002, the date of the incident in question. Upon failure of DCI to respond, Adams submits that he filed duplicate claims on September 19th and December 22nd of that same year. DCI, by contrast, avers that Adams' claim was not received until December 24, 2002. In all events, it is apparent that DCI rejected Adams' first step claim in November 2003, finding no gross negligence on the part of DCI employees.[2][3] Thereafter, Adams *724 filed a request for further review, alleging that the officers involved were negligent in violating DCI safety policy. The second request was denied in May 2004.[4]
In the interim, on August 4, 2003, Adams filed suit in the 20th Judicial District Court, seeking money damages for injuries he allegedly sustained as a result of the incident.[5] On April 5, 2004, upon the joint motion of Adams and the defendants, an order was entered dismissing the case without prejudice.[6]
Following dismissal of the first suit, Adams filed a second suit on April 6, 2005. In response, the Department of Public Safety and Corrections, Richard Stalder and James LeBlanc ("relators") filed a peremptory exception of prescription, seeking dismissal of the suit with prejudice. Therein, the relators argued that Adams failed to timely file an administrative claim for relief pursuant to La. R.S. 15:1172, which provides in pertinent part:[7]
B.(1) An offender shall initiate his administrative remedies for a delictual action for injury or damages within ninety days from the day the injury or damage is sustained.
...
C. If an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in Subsection B of this Section, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice. If at the time the petition is filed the administrative remedy process is ongoing but has not yet been completed, the suit shall be dismissed without prejudice.
...
E. Liberative prescription for any delictual action for injury or damages arising out of the claims asserted by a prisoner in any complaint or grievance in *725 the administrative remedy procedure shall be suspended upon the filing of such complaint or grievance and shall continue to be suspended until the final agency decision is delivered.
To the extent that they aver that Adams' claim for administrative relief was not received until December 2002, more than four months after the incident in question, the relators submit that the claim was abandoned and the instant proceedings should be dismissed with prejudice pursuant to La. R.S. 15:1172(C). Further, insofar as delictual actions are subject to a liberative prescription of one year and Adams did not file the instant suit until April 6, 2005, the relators argue that Adams' claim has prescribed pursuant to La. Civ.Code art. 3492.
The exception came for hearing on September 12, 2005. At that time, the trial court denied the exception in open court, noting inter alia:
[T]he statute does say that the delictual prescriptive period is interrupted until the response by the State is delivered.... The second lawsuit was filed timely assuming that the first lawsuit interrupted prescription and 1 will concede that the records in this case, the administrative record and the record in this litigation are far from clear ....
(Tr. Hr'g. at 13)(emphasis added). A written judgment denying the exception was signed on September 16, 2005. To date, the relators have filed a timely writ application, seeking review of the denial of the exception of prescription.[8]
In determining the applicable prescriptive period, the court is guided by the well-settled principle that the character of a cause of action as disclosed in the pleadings determines the prescriptive period applicable to that action. Jones v. State of Louisiana, 891 So.2d 698, 701 (La.App. 4 Cir. 9/29/04), writ denied, 2004-2706 (La.1/7/05), 891 So.2d 681; SS v. State ex rel. Dep't of Soc. Servs., XXXX-XXXX (La.12/4/02), 831 So.2d 926. In this case, the trial court used the term "interruption" in regard to prescription, whereas the relevant statute, La. R.S. 15:1172(E), uses the term "suspension" in regard to liberative prescription. Further, in briefs to this Court, Adams argues that he had one year subsequent to delivery of the final agency decision on May 7, 2004, to file suit. In this sense, Adams seems to argue that prescription was interrupted until May 7, 2004.
The concepts of interruption and suspension are, however, distinguishable. If prescription is interrupted, the time that has run is not counted, and prescription commences to run anew from the last day of interruption. La. Civ.Code art. 3466. By contrast, if prescription is suspended, the period of suspension is not counted toward the accrual of prescription but the time that has previously run is counted. La. Civ.Code art. 3472. In other words, if the one-year prescriptive period for delictual actions is suspended for any reason, *726 the clock merely stops running during the suspension, and thereafter the obligee has only so much of the one year as was remaining when the suspension began.
The trial court erred in finding that the statute provides for the interruption, rather than suspension, of the prescriptive period for delictual actions. Since we believe that this constitutes legal error, we grant the writ and vacate the judgment of the trial court dated September 16, 2005. The matter is remanded to the trial court for proper application of the law to the facts at hand.
WRIT GRANTED AND MATTER REMANDED.
NOTES
[1] Adams was subsequently released from DCI on August 28, 2002.
[2] The First Step Response Form prepared by DCI and contained in Exhibit D to the writ application is titled as follows: "Response to request dated 08/02/02, received in this office on 11/19/03."
[3] The parties and the trial court, in the transcript of the hearing on the instant exception, aver that the first step claim was rejected on November 18, 2003. The actual notice of rejection, however, is dated November 24, 2003.
[4] The parties and the trial court, in the transcript of the hearing on the instant exception, aver that the second step claim was denied on May 7, 2004. The actual notice of rejection, however, is dated May 5, 2004.
[5] The relators contend in the writ application that the original suit was filed on November 4, 2003. In the petition filed in the second suit, however, Adams stated the filing date was August 4, 2003. Also, both Adams, in briefs to this Court, and the trial court, in the transcript of the hearing on the instant exception, stated that the suit was filed on August 4, 2003. Accordingly, it appears that the relators erroneously stated the filing date in the instant writ. No copy of the original petition for damages, however, has been provided to this Court. This Court also notes that August 2, 2003, was a Saturday; therefore, filing on Monday, August 4th, would be within one year of the incident.
[6] The relators filed a motion to dismiss based on failure to exhaust administrative remedies on February 5, 2004. Since the second step was not denied until May 2004, it appears failure to exhaust was the reason for the dismissal.
[7] La. R.S. 15:1172 was amended by Acts 2002, 1st Ex.Sess., No. 89, § 2, in response to the decision of the Louisiana Supreme Court in Pope v. State, 99-2559 (La.6/29/01), 792 So.2d 713, finding CARP unconstitutional to the extent it vested DOC officials with original jurisdiction in writ actions. Insofar as Acts 2002, 1st Ex.Sess. No. 89, was made effective April 18, 2002, and Adams' claim did not arise until August of that year, the amended statute is applicable herein.
[8] The relators filed a Notice of intent to Apply for Writs on October 4, 2005, and the trial court set a return date for November 4, 2005. Thereafter, the relators timely filed a writ application with this Court, captioned as 2005 CW 2312. The original application, however, did not include a notarized affidavit and copies of the pleadings reviewed by the trial court. Accordingly, this Court refused consideration of the writ for violation of Rule 4-5 of the Uniform Rules for Louisiana Courts of Appeal, allowing DPSC until January 11, 2006, to file a new application. See Adams v. Stalder, et al., 2005-2312 (La.App. 1 Cir. 12/28/05) (unpublished writ action). On January 11, 2006, the relators filed the instant writ application, which complies with the Uniform Rules for Louisiana Courts of Appeal.