972 So.2d 328 (2007)
Christle and August M. BERTONIERE
v.
JEFFERSON PARISH HOSPITAL SERVICE DISTRICT NO. 2, d/b/a East Jefferson General Hospital, Stewart A. Nutting, M.D., James D. Conway, M.D., S. Bleich, M.D., and ABC Insurance Company.
No. 07-CA-301.
Court of Appeal of Louisiana, Fifth Circuit.
October 30, 2007.
*329 Kevin D. Shearman, Attorney at law, Metairie, Louisiana, for Plaintiff/Appellant.
J. Marc Vezina, Kelli M. Khalaf, Attorneys at Law, Gretna, Louisiana, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
In this medical malpractice action, plaintiffs appeal from a judgment granting in part an exception of prescription brought by the Louisiana Patient's Compensation Fund. For the reasons stated *330 herein, we affirm the trial court's judgment.
Facts and Procedural History
On January 9, 1997, Christle and August M. Bertoniere filed a petition for damages against Jefferson Parish Hospital Service District No. 2, d/b/a East Jefferson General Hospital, Dr. Stewart A. Nutting, Dr. James D. Conway, Dr. S. Bleich and an unnamed insurance company alleging negligence on the part of the named physicians.[1] In this petition, plaintiffs allege that on December 31, 1995, August Bertoniere presented to the East Jefferson emergency room complaining of chest pain. He was examined by Dr. Michael Federline, and after ordering an EKG, Dr. Federline discharged Mr. Bertoniere with a diagnosis of left shoulder pain.
The following day, Mr. Bertoniere appeared again at the emergency room complaining of recurrent chest pain. Dr. Federline ordered another EKG. Mr. Bertoniere was diagnosed at this time as having sustained an "acute inferior wall myocardial infarction" and he was admitted to the hospital and seen by his internist, Dr. James Conway. The petition further alleges that Mr. Bertoniere underwent bypass surgery which was performed by Dr. Stewart Nutting on January 5, 1996. He was referred to Dr. Bleich for consult and follow-up. According to the petition, Mr. Bertoniere was discharged by Dr. Conway "to home health care and family" on January 8, 1996.
Mr. Bertoniere was brought back to the emergency room on January 9, 1996 after his wife found him "slightly incoherent with garbled speech and a blank expression." Mrs. Bertoniere was told by Dr. Nutting that her husband had suffered a "cerebral vascular accident due to an embolus" and he remained in the hospital until January 19, 1996. Since that date, he has remained in a semi-vegetative state.
In their original petition, plaintiffs allege Mr. Bertoniere was discharged to home health care with incorrect medication orders. They allege that Drs. Nutting, Conway and Bleich breached the standard of care in failing to give adequate orders for proper maintenance of hemostasis and/or anticoagulation therapy prior to discharge. Plaintiffs also allege that East Jefferson was negligent in failing to properly record and communicate the physicians' orders prior to discharge of Mr. Bertoniere.
Defendants responded to this petition with exceptions of prematurity on the basis that plaintiffs had not brought their claim to a medical review panel prior to the filing of this suit. The trial court granted the exceptions, and dismissed plaintiffs' suit without prejudice. Thereafter, plaintiffs filed a request for review and complaint with the Louisiana Patient's Compensation Fund Oversight Board and an opinion of the panel was issued on September 9, 1998.
Plaintiffs subsequently amended their petition to include as defendant the home health nurse and the agency which cared for Mr. Bertoniere after his hospital discharge. By a second amending and supplemental petition filed on November 30, 1998, plaintiffs included all defendants named in the original petition, and further named as defendants Dr. Michael Federline and the home health nurse and agency which cared for Mr. Bertoniere after his hospital discharge. In this petition, plaintiffs alleged that the EKG ordered by Dr. Federline in the emergency room on December 31, 1995 indicated a myocardial *331 infarction in progress and that Mr. Bertoniere should have been immediately admitted to the hospital and treated.
On January 24, 2001, the home health care agency was dismissed by summary judgment without opposition of plaintiffs.
On joint motion of dismissal filed on September 3, 2003 and signed by the trial court on September 25, 2003, plaintiffs' claims against Dr. Stewart Nutting and Dr. Michael Federline were dismissed with prejudice based on settlements obtained, reserving their status as nominal parties for the purposes of plaintiffs seeking additional compensation from the Louisiana Patient's Compensation Fund.
In February of 2004, the plaintiffs also filed a motion to dismiss East Jefferson General Hospital based on a settlement obtained, and this party was dismissed with prejudice reserving plaintiffs' rights to proceed against the remaining defendants and the Louisiana Patient's Compensation Fund.
Further, by summary judgment signed by the trial court on February 11, 2004, plaintiffs' claims against Dr. Stanley Bleich and Dr. James Conway were dismissed.
Plaintiffs subsequently filed into these proceedings a petition demanding payment from the Louisiana Patient's Compensation Fund ("PCF") pursuant to La. R.S. 40:1299.44(C). The Patient's Compensation Fund responded with an exception of prescription arguing that plaintiffs' medical malpractice claims were not timely filed.
By judgment rendered on June 13, 2006, the trial court maintained in part and overruled in part the exception of prescription as follows:
A) As to defendant Dr. Stewart A. Nutting, the exception of prescription is OVERRULED at exceptor's costs; and
B) As to defendant Dr. Michael Federline, the exception is MAINTAINED dismissing all petitioners' claims against Dr. Federline with prejudice at petitioners' costs.
In its reasons for judgment, the trial court found that the medical malpractice claims were filed by plaintiffs in this case on January 8, 1997, based on the letter sent by the PCF to plaintiffs on January 22, 1997 acknowledging receipt of their claims. The trial court further found that prescription began as to Dr. Nutting when plaintiff became aware of the damage incurred, i.e., his stroke on January 9, 1997. Thus, the trial court concluded the claim against Dr. Nutting was timely filed. As to Dr. Federline, the trial court found that the malpractice occurred when the EKG was allegedly misread on December 31, 1995 and that plaintiffs had knowledge of this error on January 1, 1996 when Mr. Bertoiniere returned to the hospital and was diagnosed with a heart attack. The court concluded that the malpractice against Dr. Federline was prescribed, as it was filed on January 8, 1997, one year plus seven days from the discovery of Dr. Federline's action in failing to diagnose a heart attack.
Plaintiffs now appeal from this ruling arguing that prescription runs not from the date of the wrongful act, but from the damage incurred. Plaintiffs contend the damage incurred by the patient in this case was the stroke he suffered on January 9, 1996, and his malpractice claim filed on January 8, 1997 is therefore timely.
Law and Analysis
The prescriptive period for medical malpractice actions is contained in La. R.S. 9:5628(A) and provides as follows:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, *332 dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
A reading of La. R.S. 9:5628 shows that the statute sets forth two prescriptive limits within which to bring a medical malpractice action, namely one year from the date of the alleged act or one year from the date of discovery with a three year limitation from the date of the alleged act, omission or neglect. Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502, 509; Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La.1986).
Ordinarily, the movant bears the burden of proof on trial of the peremptory exception, including the objection of prescription. SS v. State, Dept. of Social Services, 02-831 (La.12/4/02), 831 So.2d 926, 931. It is only where a petition reveals on its face that prescription has run that the burden shifts to the plaintiff to show that his action has not prescribed. SS v. State, 831 So.2d at 931. The burden remains with the movant where the plaintiff's pleadings make "a prima facie showing" that the suit was filed within the delays set forth in La. R.S. 9:5628. Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502, 509. A petition should not be found prescribed on its face if it is brought within one year of the date of discovery and facts alleged with particularity in the petition show that the patient was unaware of malpractice prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent, or unreasonable action of the patient. Id.
Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription. Nevertheless, a plaintiff's mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. Even if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was reasonable for the plaintiff not to recognize that the condition might be treatment related. The ultimate issue is the reasonableness of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct. Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502, 510-11 (citations omitted.)
In the present case, plaintiffs name Dr. Federline as a defendant in their second *333 supplemental and amending petition and allege as follows:
On or about December 31, 1995, August M. Bertoniere, a 52 year old male, appeared about 7:00 a.m., Sunday, at the Emergency Room of East Jefferson General Hospital ("East Jeff") with complaints of chest pains. He was examined by Michael Federline, M.D., who ordered an EKG, which was interpreted as normal, and discharged petitioner with a diagnosis of "Musculoskeletal pain, left shoulder pain". In truth and in fact, the EKG revealed a coronary blockage indicating a myocardial infarction in progress and that Mr. Bertoniere should have been immediately admitted to the hospital and treated.
In plaintiffs' original petition, plaintiffs allege that Mr. Bertoniere returned to the emergency room with complaints of recurrent chest pains on January 1, 1996, and that an EKG performed on this date was abnormal and indicated he had suffered a myocardial infarction or a heart attack. He further alleges in this petition that Mr. Bertoniere suffered a stroke on January 9, 1996 based on a failure to give adequate orders upon his discharge.
Plaintiffs' petition does not specifically allege when the negligence of Dr. Federline in interpreting the EKG result was discovered. However, the facts as alleged in the petition indicate that plaintiffs were made aware on January 1, 1996 that Mr. Bertoniere had suffered a heart attack. This information was sufficient to put plaintiffs on notice that Dr. Federline's interpretation of the EKG performed on the previous date was inaccurate, or at least excite their attention and put them on guard and call for inquiry. Thus, the allegations of plaintiffs' petition indicates that plaintiffs knew or should have known of Dr. Federline's alleged negligence on January 1, 1996 when they were informed he sustained a heart attack.
Plaintiffs' medical malpractice claim was filed on January 8, 1997 and the original petition for damages was filed on January 9, 1997. As plaintiffs' petition shows that more than one year elapsed from plaintiffs' knowledge of Dr. Federline's negligence, the petition indicates the claims have prescribed on its face, and plaintiff has the burden of proof to show that the action has not prescribed. Our review of the record fails to indicate that plaintiffs have met this burden.
Plaintiffs argued in the trial court and on appeal that prescription begins to run from the date damages are incurred, rather from the date of the wrongful act. They contend that damages were sustained in this case is the date Mr. Bertoniere suffered a stroke, January 9, 1996. Accordingly, they contend that the claim for damages was filed within the one year prescriptive period proscribed by La. R.S. 9:5628 and is therefore timely.
However, although we do not dispute that prescription begins to runs from the date damages are sustained as provided in La. C.C. art. 3492, we fail to find any factual support in the record for plaintiffs' contention that the stroke sustained by Mr. Bertoniere constitutes the damages sustained by Dr. Federline's negligence. Rather, the record indicates that the alleged wrongful act of Dr. Federline occurred in the emergency room on December 31, 1995. The damage incurred as a result of this alleged wrongful act was the heart attack which was diagnosed and communicated to plaintiffs on January 1, 1996. The stroke which was suffered by Mr. Bertoinere on January 9, 1996 was not incurred as a result of any wrongful act on the part of Dr. Federline. Nothing in the record suggests that Dr. Federline's actions or inactions on December 31, 1995 in *334 any way contributed to the stroke which Mr. Bertoniere eventually sustained.
Further, we fail to find that prescription was suspended by the theory of continuing-torts. The allegations against Dr. Federline are independent, separate and distinct from the allegations asserted against the other named physicians. The alleged misinterpretation of the EKG is not inextricably tied to Dr. Nutting's subsequent cardiology treatment. Thus, these are two separate allegations of malpractice which result in two separate prescription dates. Dr. Federline's negligence constituted a "single breach of duty" and is therefore not subject to the theory of continuing-tort. See, Medical Review Panel for Claim of Moses, In re, 00-2643 (La.5/25/01), 788 So.2d 1173, 1187.
Further, when Mr. Bertoniere was diagnosed with a heart attack on January 1, 1996, plaintiffs were put on notice or at least were called to inquiry as to whether Dr. Federline may have misinterpreted the results of the EKG which had been performed the previous day. We agree with the determination of the trial court that a reasonable person would have been put on immediate inquiry on January 1, 1996 when Mr. Bertoniere returned to the emergency room and was diagnosed with a heart attack.
Accordingly, for the reasons assigned herein, we find that the trial court correctly determined that the prescriptive period for the alleged negligence of Dr. Michael Federline began on January 1, 1996 when plaintiffs knew or should have known of the alleged wrongful acts. Pursuant to the one year prescriptive period for medical malpractice actions contained in La. R.S. 9:5628, we find that plaintiffs' claims asserted on January 8, 1997 have prescribed as to Dr. Federline. The judgment of the trial court is therefore affirmed at plaintiffs' costs.
AFFIRMED.
NOTES
[1] The record also indicates that plaintiffs notified the Louisiana Patient's Compensation Fund of its claim against these physicians by letter dated January 9, 1997, although the acknowledgement of this letter also shows that the claim was filed on January 9, 1997.