STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-120

SAM DOE

VERSUS

THE SOCIETY OF THE ROMAN CATHOLIC CHURCH
OF THE DIOCESE OF LAFAYETTE

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2020-4792
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, Guy E. Bradberry, Candyce G. Perret, and Charles G. Fitzgerald, Judges.

FITZGERALD, J., Concurs and assigns reasons.

GREMILLION, J., Dissents for the reasons assigned by Judge Bradberry.

BRADBERRY, J., Dissents and assigns reasons.

**AFFIRMED.**

Gilbert H. Dozier
625 Jefferson Street
Lafayette, LA 70501
(337) 232-4600
COUNSEL FOR DEFENDANT-APPLICANT:
    The Society of the Roman Catholic Church the Diocese of Lafayette

Richard C. Trahant
2908 Hessmer Avenue
Metairie, LA 70002
(504) 780-9891
COUNSEL FOR PLAINTIFFS-RESPONDENTS:
    Sam Doe

John H. Denenea Jr.
Shearman-Denenea, L.L.C.
4240 Canal Street, 1st Floor
New Orleans, LA 70119
(504) 304-4582
COUNSEL FOR PLAINTIFFS-RESPONDENTS:
    Sam Doe

Soren E. Gisleson
Joseph E. "Jed" Cain
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, LA 70113
(504) 581-4892
COUNSEL FOR PLAINTIFFS-RESPONDENTS:
    Sam Doe

Jeff Landry
Attorney General
Chimene Y. St. Amant
David Jeddie Smith, Jr.
Assistant Attorneys General
Post Office Box 94005
Baton Rouge, LA 70804-9005
(225) 326-6000
COUNSEL FOR OTHER RESPONDENT:
    State of Louisiana
    Office of Attorney General, Louisiana Department of Justice

Wayne J. Fontana
Stephen G. Collura
Roedel Parsons Blache Fontana Piontek & Pisano, A L.C.
1555 Poydras Street, Suite 1700
New Orleans, LA 70112
(504) 566-1801
COUNSEL FOR OTHER RESPONDENTS:
    American Property Casualty Insurance Association
    Louisiana Association of Self-Insured Employers

Richard C. Stanley
Eva J. Dossier
Matthew J. Paul
Stanley Reuter Thornton Alford, LLC
909 Poydras Street, Suite 2500
New Orleans, LA 70112
(504) 523-1580
COUNSEL FOR OTHER RESPONDENTS:
    Jesuit High School of New Orleans
    U.S. Central & Southern Province, Society of Jesus

**PICKETT, Judge.**

The defendant applied for writs of certiorari from this court's denial of its writ application that challenged the retroactive provision of a statute which eliminated its liberative prescription defense to claims filed by the plaintiff, whose claim for being sexually abused as a minor was prescribed under pre-existing law. The supreme court granted the writ and remanded the matter to this court with instructions to determine whether the statute applied to the plaintiff's claim and, if so, whether retroactive application of the statute to the defendant is constitutional. *Doe v. Society of the Roman Catholic Church of the Diocese of Lafayette*, 22-829 (La. 10/14/22), 347 So.3d 148.

## FACTS AND PROCEDURAL BACKGROUND

Sam Doe alleges that in 1961 or 1962, when he was sixteen years of age, Father Stanley Begnaud inappropriately touched him. At that time, Begnaud was the priest at St. Stephen's Catholic Church in Berwick, Louisiana, within the Diocese of Lafayette. The Diocese transferred Begnaud to various other churches but never removed him from active ministry. Begnaud continued serving as a priest until his retirement in 1982. He died in 1985. The Diocese knew of Begnaud's behavior and listed him as a "known pedophile" but did not disclose this information to the public until 2019.

Doe filed suit against the Diocese on September 30, 2020, alleging, in part, that the doctrine of contra non valentum applies to his claims. The Diocese filed an exception of prescription asserting Doe's action had prescribed no later than 1963. Doe opposed the exception arguing that, if his action had prescribed, Act 322 of the 2021 Legislative Session had revived his action. Act 322 amended La.R.S. 9:2800.9, enacted in 1993, to provide that an action for sexual abuse of a minor does not prescribe. Act 322 also provided for a "look-back period" of three

years. The trial court held a hearing on the Diocese's exception of prescription on January 18, 2022. Counsel for Mr. Doe stipulated that in 2002, he had "memories" of being sexually abused, but also stipulated that he did not recall this until 2019 in the course of counseling he had been receiving for a number of years. He filed suit on September 30, 2020. The Diocese argued that La.R.S 9:2800.9 does not apply to Doe's action and that the statute is unconstitutional.

The trial court denied the Diocese's exception. The Diocese filed an application for supervisory writs asking this court to find that Doe's action was prescribed and that La.R.S. 9:2800.9 is unconstitutional. This court denied the writ application, finding no error with the trial court's ruling. The Diocese filed an application for writ of certiorari review with the supreme court asserting that this court erred in denying its writ application. The supreme court granted the Diocese's writ application for the sole purpose of remanding the case to this court for briefing, argument, and a full opinion. The supreme court issued a Per Curiam order which provides:

> The writ is granted for the sole purpose of remanding the case to the court of appeal for briefing, argument, and full opinion.
>
> In its opinion, the court of appeal should discuss whether the 2021 amendment to La. R.S. 9:2800.9 manifested an express intent to revive all claims prescribed under the prior law. *See Cameron Par. Sch. Bd. v. ACandS, Inc.*, 96-0895 (La. 1/14/97), 687 So.2d 84; *Chance v. American Honda Motor Co., Inc.*, 93-2582 (La. 4/11/94), 635 So.2d 177.
>
> If the court determines the 2021 amendment has the effect of reviving the prescribed cause of action in this case, it should then address relator's alternative argument that such a result would unconstitutionally impair relator's vested right in the defense of liberative prescription.

*Doe*, 347 So.3d 148.

2

***Does Act 322 Manifest an Express Intent to Revive All Claims Prescribed under the Prior Law?***

Louisiana Civil Code Article 6 states, "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."

Prior to Act 322, La.R.S. 9:2800.9 provided a ten-year liberative prescriptive period for minor victims of sexual abuse, which commenced to run from the day the minor reached the age of majority. Act 322 removed the prescriptive period and now provides, in pertinent part: "(A)(1) An action against a person for sexual abuse of a minor, or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring does not prescribe."

Section 2 of Act 322 (emphasis added) further provides:

> For a period of three years following the effective date of this Act, any party whose action under R.S. 9:2800.9 was barred by liberative prescription prior to the effective date of this Act shall be permitted to file an action under R.S. 9:2800.9 against a party whose alleged actions are the subject of R.S. 9:2800.9. *It is the intent of the legislature to revive for a period of three years any claim against a party, authorized by R.S. 9:2800.9, that prescribed prior to the effective date of this Act.*

Act 322 and the amended language of La.R.S. 9:2800.9 became effective on June 14, 2021, after Doe had filed suit against the Diocese, and after the Diocese filed its exception of prescription, but before the hearing on the Diocese's exception of prescription was held. The Diocese argues that Act 322 should be given a narrow effect and that it does not apply to Doe's claims. It contends that Section Two of Act 322 is limited to an amendment of the existing statute, i.e., La.R.S. 9:2800.9, and that Section 322(A) is prospective only for those claims that have never prescribed, meaning individuals under the age of twenty-eight.

3

Before this court released its opinion in *Doe*, the supreme court released its opinion in *T.S. v. Congregation of Holy Cross Southern Province, Inc. & Holy Cross College, Inc.*, 22-1826 (La. 6/27/23), __ So.3d __, 2023 WL 4195778, where the supreme court held that Act 322's amendment to La.R.S. 9:2800.9 did not manifest an express intent to revive all claims prescribed under the prior law. Therefore, we will consider what, if any, impact *T.S.* has on this court's findings and conclusions herein.

In *T.S.*, Holy Cross also argued initially that Act 322 did not expressly manifest an express intent to revive all sexual abuse claims under La.R.S. 9:2800.9 but abandoned it. Nonetheless, the supreme court relied on that argument to conclude that Act 322 did not revive claims for sexual abuse that arose before 1993 when La.R.S. 9:2800.9 was enacted.[1] The court determined that "T.S.'s suit was not an action 'under R.S. 9:2800.9' for purposes of Section 2 of the 2021 amendment," T.S.'s claim from the mid-1960's could not be revived without "a clear legislative expression," and Section 2 of the 2021 amendment did not provide "a clear legislative expression." __ So.3d __; 2023 WL 4195778, p. 4.

The supreme court went on to recognize that La. 2022 Acts 386, Section 2 amended La.R.S. 9:2800.9 again to include a specific statement that the legislature intended to revive all previously prescribed claims for sexual abuse until June 14, 2024. Act 386, Section 2 states, in pertinent part: "It is the express intent of the legislature to revive until June 14, 2024, any cause of action related to sexual abuse of a minor that previously prescribed under any Louisiana prescriptive period." The supreme court concluded, however, that because T.S. filed his suit prior to the June 2022 enactment of Act 386, only Act 322 was properly before the court. The

---

[1] The supreme court considered the argument to determine whether the case could be resolved without addressing the constitutionality of Act 322.

4

court also observed that pursuant to La.Code Civ.P. art. 927(B), an exception of prescription must be "specially pleaded" and "the court may not supply the objection" then refused to consider whether Act 386 affected its determination that the legislature did not expressly state in Act 322, as it did in Act 386, that it intended to revive all causes of action for sexual abuse that arose prior to its 2021 enactment of Act 322.

Justice Weimer dissented in *T.S.* and observed that based on the facts T.S. alleged in his petition, the constitutional question presented therein remained unresolved and that a resolution was necessary for the litigation to proceed. Justice Weimer further observed that T.S. filed his petition "in August 2021, and the suit was pending when 2022 La. Acts 386, § 2, became law and clarified the intent of 2021 La. Acts 322, § 2." ___ So.3d ___; 2023 WL 4195778, p. 8. He noted that in Act 386, the legislature clarified its intention for Act 322 when *T.S.* was in district court. Citing the general rule that courts must apply the law existing at the time of its decision, Justice Weimer opined that the majority's conclusions that T.S.'s action is prescribed and that he has no cause of action "effectively discounts a material change in the law." *Id.*

In *Segura v. Frank,* 93-1271, 93-1401 (La. 1/14/94), 630 So.2d 714, 725 (internal citations omitted), the supreme court held:

> The general rule is that appellate courts will not consider issues raised for the first time on appeal. Another general rule, however, is that an appellate court is bound to adjudge a case before it in accordance with the law existing at the time of its decision. Where the law has changed during the pendency of a suit and retroactive application of the new law is permissible, the new law applies on appeal even though it requires reversal of a trial court judgment which was correct under the law in effect at the time it was rendered. Needless to say, where the law has changed after the trial court's decision, the applicability of the new law can be argued for the first time only on appeal.

5

The supreme court tasked this court with determining whether Act 322 manifested an express intent to revive all claims that had prescribed under prior laws governing sexual abuse but thereafter determined in *T.S.* that it does not. Doe asserts that the procedural posture of this case differs from *T.S.* because Doe waived his defense of contra non valentum in the trial court, and therefore, prescription is not an issue herein. He urges that the only issue to be addressed is the constitutionality of Act 386. Doe further points out that pursuant to Uniform Rules—Courts of Appeal, Rule 1-3, appellate courts should review issues that were not submitted to the trial court when the interest of justice requires.

Pursuant the directives in *Segura* and Rule 1-3, we will proceed to determine whether Act 386 expresses the intent to revive all claims for sexual abuse that previously prescribed and whether it can be applied retroactively. In our view, the issues presented in *T.S.*, this case, and others like these, present compelling public safety interests that should be resolved in a timely manner, i.e., before the June 14, 2024 deadline established by Act 386.

Act 386 specifically states that it was "the express intent of the legislature to revive until June 14, 2024 any cause of action related to the sexual abuse of a minor that previously prescribed under any Louisiana prescriptive period." For these reasons, we conclude that the legislature's 2022 amendment to La.R.S. 9:2800.9 manifested a clear and unequivocal intent to apply Act 386 retroactively and revive all sexual abuse claims that were prescribed under the prior law.

### *Constitutionality of the Retroactivity Provisions of Acts 322 and 386*

The State of Louisiana[2] asserts that Act 386 is an interpretive law because it "merely clarifies" Act 322 and that it applies retroactively to revive "any cause of

---

[2]The State through the Attorney General filed an Amicus Curiae brief to defend the constitutionality of Act 322. The Jesuit High School of New Orleans and U.S. Central & Southern Province, Society of Jesus filed an Amicus Curiae brief. The American Property

6

action related to sexual abuse of a minor that previously prescribed under any Louisiana prescriptive period." The State further argues that Act 386 is therefore constitutional. This contention is based in part on Planiol's discussion of interpretive laws, where he explained: "Interpretive laws do not establish new rules. What they do is to determine the meaning of existing laws. It follows that they may apply to facts previous to their promulgation. Their retroactivity is but apparent, <u>because it is not the interpretive law, but the original law, which applies</u>." *St. Paul Fire & Marine Ins. Co. v. Smith*, 609 So.2d 809, 818 (La. 1992) (quoting 1 M. Planiol, *Civil Law Treatise* No. 251 (La.St.L.Inst.Transl.1959) (emphasis added)). We agree that Act 386 clarifies Act 322. The State's argument, however, fails to recognize that Act 386 does not obviate the necessity of determining whether Act 322 is constitutional because, as the original law, it applies. Accordingly, we now consider whether Act 322, as interpreted by Act 386, is constitutional.

Doe asserts that the Diocese's exception of prescription lacks merit, arguing his claim against it is not prescribed because Acts 322 and 386 apply retroactively and revived his claim. The Diocese counters that Acts 322 and 386 divest it of a vested right, the right to plead liberative prescription to defeat Doe's claim; therefore, it is unconstitutional. Doe and the State argue that Acts 322 and 386 are not unconstitutional, delineating the important legal distinctions between prescription and peremption. The distinctions between prescription and peremption are crucial to the determination of whether the right to plead liberative

---

Casualty Insurance Association and Louisiana Association of Self-Insured Employers jointly filed an Amicus Curiae brief in support of the Diocese's position that the retroactive revival of Act 322 is unconstitutional, which sets forth policy reasons that are best left to the legislative process.

prescription is a vested right. These two legal concepts are completely different and must not be conflated.

Louisiana Civil Code Article 6 provides guidance for the review of a peremptory exception that asserts a statute is unconstitutional because it is to be applied retroactively. In accordance with La.Civ.Code art. 6, the supreme court has always held that prescription is procedural in nature, not substantive. *Succession of Lewis*, 22-79 (La. 10/21/22), 351 So.3d 336; *State v. All Prop. & Cas. Ins. Carriers Authorized & Licensed To Do Bus. In State*, 06-2030 (La. 8/25/06), 937 So.2d 313; *Cameron Par. Sch. Bd. v. Acands, Inc.*, 96-895 (La. 1/14/97), 687 So.2d 84; *Chance v. Am. Honda Motor Co., Inc.*, 93-2582 (La. 4/11/94), 635 So.2d 177.

### Vested Rights

Pursuant to the supreme court's instructions, we must determine whether the retroactive application of Acts 322 and 386 "would unconstitutionally impair [the Diocese's] vested right in the defense of liberative prescription." *Doe*, 347 So.3d 148. This instruction seems to accept the Diocese's argument that it has a vested right to plead liberative prescription to defeat Doe's cause of action. The Diocese relies strictly on jurisprudence for its position that its right to plead prescription is a vested right. It has not identified a statutory source for this conclusion, and no statute has been located that provides such. In *Doerr v. Mobil Oil Corp.*, 00-947, pp. 13-14 (La. 12/19/00), 774 So.2d 119, 128-29, *opinion corrected on reh'g*, 00-

8

947 (La. 3/16/01), 782 So.2d 573 (bold emphasis added) (unquoted case citations omitted) (footnote omitted) (third alteration in original), this court discussed the roles of legislation and jurisprudence in Louisiana's civil law:

The Civil Code establishes only two sources of law in Louisiana: legislation and custom. *See* La. Civ.Code art. 1. Within these two categories, legislation is superior to custom and will supercede it in every instance. *See* La. Civ.Code art. 3. Judicial decisions, on the other hand, are not intended to be an authoritative source of law in Louisiana. *See* A.N. Yiannopoulos, *Louisiana Civil Law System* § 35, p. 53 (1977). Consequently, Louisiana courts have frequently noted that our civilian tradition does not recognize the doctrine of *stare decisis* in our state.

Instead, a long line of cases following the same reasoning within this state forms *jurisprudence constante*. As summarized by this court in *Johnson* [*v. St. Paul Mercury Ins. Co.*, 256 La. 289, 296, 236 So.2d 216, 218 (1970), *overruled on other grounds*],

Fundamental and elementary principles recognize that certainty and constancy of the law are indispensable to orderly social intercourse, a sound economic climate and a stable government. Certainty is a supreme value in the civil law system to which we are heirs. In Louisiana, courts are not bound by the doctrine of *stare decisis*, but there is a recognition in this State of the doctrine of *jurisprudence constante*. Unlike *stare decisis*, this latter doctrine does not contemplate adherence to a principle of law announced and applied on a single occasion in the past.

*Johnson* [*v. St. Paul Mercury Ins. Co.*, 256 La. 289, 296, 236 So.2d 216, 218 (1970), *overruled on other grounds, Jagers v. Royal Indem. Co.*, 276 So.2d 309, 312 (La.1973)]. **Under the civilian tradition, while a single decision is not binding on our courts, when a series of decisions form a "constant stream of uniform and homogenous rulings having the same reasoning,"** *jurisprudence constante* **applies and operates with "considerable persuasive authority."** James L. Dennis, *Interpretation and Application of the Civil Code and the Evaluation of Judicial Precedent*, 54 La. L.Rev. 1, 15 (1993). **Because of the fact that "one of the fundamental rules of [the civil law tradition] is that a tribunal is never bound by the decisions which it formerly rendered: it can always change its mind,"** 1 **Marcel Planiol,** *Treatise on the Civil Law* § 123, **(La. State Law Inst. trans. 1959) (12th ed.1939), prior holdings by this court are persuasive, not authoritative, expressions of the law.** *See* **Yiannopoulos,** *supra,* **at § 35, p. 54. Thus, it is only when courts consistently recognize a long-standing rule of law outside of legislative expression that the rule of law will become part of**

9

**Louisiana's custom under Civil Code article 3 and be enforced as the law of the state.** *See* **La.Civ.Code art. 3.**

Importantly, La.Civ.Code art. 3 provides "Custom may not abrogate legislation."

In *Cameron Parish School Board*, 687 So.2d 84, and *Chance*, 635 So.2d 177, the supreme court determined that once a prescriptive period has elapsed an obligor has the right to plead liberative prescription and that the legislature's revival of previously prescribed claims denies a defendant of his substantive right to plead prescription. Nonetheless, the supreme court concluded in *Chance*, "Guided by the principles established in article 6, we require, at the very least, a clear and unequivocal expression of intent by the legislature for such an 'extreme exercise of legislative power.'" *Id.* at 178 (quoting *Hopkins v. Lincoln Trust Co.*, 233 N.Y. 213, 215, 135 N.E. 267, 267 (1912)). The court further explained that resolution of the issue raised by the defendant rests on "whether the right to plead the defense of prescription is a constitutionally vested right." *Id.* at 179, fn. 6.

Justice Hall went further in his concurrence and determined that a defendant's right to plead prescription is a vested right, stating:

> That result is consistent with the civilian teachings that the effect of the running of prescription is to extinguish the underlying obligation. 2 M. Planiol, *Treatise on the Civil Law* § 690 (La.State Law Inst.Trans.1959). . . . *Louisiana Health Service and Indem. Co. v. McNamara*, 561 So.2d 712, 718 (La.1990) (stating that obligor's patrimony is increased when the claim prescribes and that "[obligor's] right to plead prescription in defense to a claim on the obligation is itself property that cannot be taken from him").

*Id.* at 180 (alteration in original). Justice Hall relied on Justice Dennis' opinion in *McNamara*, 561 So.2d 712, to reach this conclusion. In *McNamara*, 561 So.2d at 718 (emphasis added), Justice Dennis held that liberative prescription protects an obligor, stating:

> [T]he obligor is protected by liberative prescriptive periods after which no claim can be made. Unlike statutes of limitations at common law, which are merely procedural bars to the enforcement of

10

obligations, *civilian prescriptive periods act to extinguish the civil obligation to which they apply. The patrimony of the obligor is increased when a claim prescribes, and his right to plead prescription in defense to a claim on the obligation is itself property that cannot be taken from him.*

Notably, Justice Dennis did not cite any Civil Code or statutory authority for his conclusions, and patrimony is not defined by either.

The supreme court rejected Justice Dennis' statements regarding prescription in *Louisiana Health Services & Indemnity Co. v. Tarver*, 93-2449 (La. 4/11/94), 635 So.2d 1090, 1097, and pointed out the fallacy of his statement in *McNamara* that "civilian prescriptive periods" are more than "procedural bars" and actually "extinguish . . . civil *obligation[s.]*" Explaining the error, the *Tarver* court pointed out that the 1982 revision of the prescription articles did not include this statement and that the 1982 revision declared the statement to be inaccurate. The court further determined that the legislature corrected the inaccuracy, stating:

> The 1982 revision explains there are three, not two, kinds of prescription, the prescription of non-use now being included with the traditional two, acquisitive and liberative, prescriptions. Art. 3445. Revision Comment (b), Art. 3445 states that liberative prescription, "being a bar to an action, is *clearly distinguishable* from prescription of non-use, which is a mode of extinction of real rights rather than ownership. . . . The slight change in conceptual technique does not involve [a] change in the law."
>
> Art. 3447 states: "Liberative prescription is a mode of *barring of actions* as a result of inaction for a period of time." Our emphasis. The comment following this article also draws the "clear distinction" noted by Art. 3445 and its comment. The language of the 1870 code [liberative prescription being a manner of discharging debts and a peremptory and perpetual bar . . .] "*is not accurate and has not been reproduced in this [1982] revision.*" Our emphasis. The comment further distinguishes "discharging *debts*" and "extinguishing *claims,*" recognizing that after the accrual of liberative prescription, "a natural obligation remains." Comment (b) in part. Comment (c) thereafter quotes the C.C.P. Art. 621 definition of an action, "a demand for the enforcement of a legal right."
>
> The Comments following the next article, Art. 3448, which speak of the prescription of non-use, also make the clear distinction, explaining that "[l]iberative prescription *bars actions. . . .* [while] the

11

prescription of non-use *extinguishes the right* itself [and] no natural obligation remains." Comments (b) and (c), Art. 3448. Our emphasis.

*Tarver*, 635 So.2d at 1097-98 (alterations in original)."

In *Sawicki v. K/S Stavanger Prince*, 01-528, p. 10 (La. 12/7/01), 802 So.2d 598, 604 (emphasis added), the supreme court held that a right is vested when:

'[T]he right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. *The right must be absolute, complete and unconditional, independent of a contingency, and a mere expectancy of future benefit . . . does not constitute a vested right.*' *Tennant v. Russell*, 214 La. 1046, 1046, 39 So.2d 726, 728 (1949) [quoting 16 C.J.S., Constitutional Law, § 215, p. 624].

*See also Succession of Pelt*, 17-860 (La.App. 3 Cir. 4/11/18), 244 So.3d 476.

Doe and the State argue that only causes of action subject to peremption satisfy the definition of vested right because a perempted right of action ceases to exist once the peremptive period has lapsed, La.Civ.Code art. 3458, while liberative prescription simply bars the enforcement of a right by action. *Dufrene v. Video Co-Op*, 02-1147 (La. 4/9/03), 843 So.2d 1066. In *Naghi v. Brener*, 08-2527, p. 7 (La. 6/26/09), 17 So.3d 919, 923 (quoting *Hebert v. Doctors Memorial Hospital*, 486 So.2d 717, 723 (La.1986)), the supreme court observed that prescription is "an inchoate right" which "may be renounced, interrupted, or suspended; and contra non valentum [3] applies an exception to the statutory prescription period where in fact and for good cause a plaintiff is unable to exercise his cause when it accrues."

Louisiana Code Civil Procedure Article 934 provides:

When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to

---

[3]Doe alleged in his petition that the Diocese knew Father Begnaud sexually abused minors but did nothing to stop the abuse from continuing, which prevented the running of prescription on his claim.

comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.

Therefore, it is only after a exception of prescription has been sustained and the subject of a judgment that the right to plead prescription is more than a mere expectancy of future benefit and is absolute, complete, and unconditional, independent of any contingency. Accordingly, considering the supreme court's determination in *Tarver*, 635 So.2d 1090, that Justice Dennis' legal reasoning in *McNamara*, 561 So.2d 712, regarding the effect of liberative prescription was faulty, we conclude that the exception of liberative prescription is not a vested right until it is the subject of a judgment sustaining such exception. Until then, it is just a mere expectation of a future benefit.

Doe and the State also argue that the removal of "vested rights" from the Louisiana Constitution of 1921 prevents the right to plead prescription from being exempt from the application of retroactive statutes. Article IV, § 15 of the 1921 Louisiana Constitution entitled "Limitations" (emphasis added) provided: "No ex-post facto law, nor any law impairing the obligation of contracts, shall be passed; *nor shall vested rights be divested*, unless for purposes of public utility, and for just and adequate compensation previously paid." While the 1921 Constitution specifically prohibited the legislature from enacting legislation that divested parties of their vested rights, the current Constitution does not.

During the 1973 Constitutional Convention, the original proposal for Art. 1, § 2 entitled "Due Process of Law" (emphasis added) provided: "No person shall be deprived of life, liberty, property, *or other rights* without substantive and procedural due process of law." A delegate to the convention proposed to amend Art. 1, § 2 to read:

> No person shall be deprived of life, liberty, property, *or other rights* without due process of law, nor be denied the equal protection

13

of the laws. No law shall discriminate against a person in the exercise of his rights. Private property shall not be taken or damaged, *nor shall vested rights be divested*, except for a public purpose and after just and adequate compensation.

Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vol. 6, at 1003 (emphasis added). The amendment was defeated. *Id.* Based on these changes, Doe and the State argue that the prohibition on divesting "vested rights" and "other rights" was removed from the Constitution and no longer included in the due process clause.[4] They assert, therefore, that "vested rights" are no longer protected by our Constitution.

The supreme court, however, has continued to hold that legislation cannot be retroactively applied if doing so "divests" one of a "vested right" "in violation of the due process guarantees under the state and federal constitutions." *Lott v. Haley*, 370 So.2d 521, 523 (La.1979). Louisiana Constitution Article 1, § 2 (1974) states, "No person shall be deprived of life, liberty, or property, except by due process of law." *See also Lewis*, 351 So.3d 336; *Smith v. Bd. of Trs. of Emps'. Ret.*, 02-2161 p. 9 (La. 6/27/03), 851 So.2d 1100; *Sawicki*, 802 So.2d 598; *Cameron Par. Sch. Bd.*, 687 So.2d 84; *Chance*, 635 So.2d 177; *Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles*, 366 So.2d 1381 (La.1978). None of these cases discussed the revision of La.Const. art. 1, § 2. Prior to 1973, "vested rights" were specifically protected by the Louisiana Constitution, but that is no longer the case. This revision further supports the conclusion that the right to plead prescription is not constitutionally protected.

In *Mills v. Mills*, 626 So.2d 1230 (La.App. 3 Cir. 1993), the trial court dismissed the husband's petition to disavow the children born during his marriage to the children's mother because his petition was not filed timely under the version

---

[4] The adjectives "substantive and procedural" describing "due process" were also removed.

14

of La.Civ.Code art. 189 in effect at that time. On appeal, this court determined that the trial court properly dismissed the father's petition. Nonetheless, the court retroactively applied La.R.S. 9:305, which was enacted *after* the father appealed the dismissal of his petition, and reversed the trial court's dismissal of the father's petition because the legislature clearly stated that La.R.S. 9:305 "retroactively extends the 180 day period in child support cases, *only,* to 180 days after its effective date." *Id.* at 1232. The court retroactively applied La.R.S. 9:305 without discussing the effects disavowal would have on the children who would no longer benefit from the child support being paid.

Recently, the retroactivity of a new statute governing the peremptive period applicable to claims for filiation was addressed by Louisiana courts. In *Succession of Lewis*, 351 So.3d at 350, the supreme court determined:

> The legislature expressly established a new peremptive period for filiation claims filed in succession proceedings, and this peremptive period applies retroactively. The heirs have no vested right to plead peremption under former La. C.C. art. 209; thus, retroactive application of La. C.C. art. 197 does not divest the heirs of a right to plead the defense of peremption. As Ms. Jefferson timely filed her filiation claim in a succession proceeding pursuant to La. C.C. art. 197, the trial court's judgment denying the administrator's exception of peremption/prescription is affirmed.

In reaching this conclusion, the supreme court found merit in the reasoning that La.Civ.Code art. 197 applied retroactively as held in *Succession of Pelt*, 244 So.3d 476, and *Succession of Younger*, 50,876 (La.App. 2 Cir. 9/28/16), 206 So.3d 1088, *writ denied,* 16-2202 (La. 1/25/17), 215 So.3d 685. In *Pelt*, this court recognized that there was conflicting jurisprudence on the issue and that the courts that held La.Civ.Code art. 197 did not apply retroactively failed to consider the article in light of other laws governing successions. Similarly, prior jurisprudence suggesting that the right to plead prescription is a vested right did not consider the differences between prescription and peremption.

15

In *Lewis*, 351 So.3d 336, the supreme court discussed and relied on *Chance*, 635 So.2d 177, to retroactively apply La.Civ.Code art. 197. In *Chance*, the supreme court held, in part, that to retroactively apply a new statute "we require at the very least, a clear and unequivocal expression by the Legislature for such an extreme exercise of legislative power." *Lewis*, 351 So.3d at 339 (quoting *Chance*, 635 So.2d at 178). In oral arguments before this court, the Diocese asserted that *Chance* is "dead" and has no application herein. The supreme court's discussion and reliance on *Chance*, 635 So.2d 177, in *Lewis* completely debunks this claim.

In *Lewis*, 351 So.3d at 347 (quoting *Pelt*, 244 So.3d at 484), the supreme court also considered the fact that the legislature's revision of La.Civ.Code art. 197 "was based on equity and policy considerations." This is especially true here because (1) the victims of childhood sexual abuse unknowingly repress memories of the abuse, which prevents them from timely pursuing a cause of action against their perpetrators, and (2) the Diocese did nothing to protect potential victims by concealing the sexual abuse of minors by priests and allowing priests who perpetrated the abuse to continue working with children without removing them from positions that allowed them access to children and without warning others of priests who abused children.

We find the following: (1) courts have failed to consider that prescription is inchoate and only "an expectancy of future benefit," (2) only the running of peremption, not prescription, extinguishes a right by operation of law, and (3) opinions have been issued that reflect a misplaced reliance on *McNamara*, 561 So.2d 712, which was quickly denounced by the supreme court as being an inaccurate statement of the law. For these reasons, prior jurisprudence on this issue is confusing and, therefore, fails to establish a long line of cases following the same reasoning which would establish *jurisprudence constante* under

16

Louisiana law. Considering all of the above, we determine that the retroactive application of Acts 322 and 386 does not violate any constitutionally protected right to assert a defense of liberative prescription. In reaching this conclusion, we are mindful that Acts 322 and 386 revive claims for sexual abuse of minors only for a limited period of three years, the Diocese did not protect children from priests reported to have sexually abused minors thereby allowing such abuse to continue, and the Diocese can assert prescription against claims asserted after June 14, 2024.

*Due Process*

The Diocese argues that the retroactive application of Acts 322 would deprive it of its due process rights under the federal constitution. As noted above, we address this argument as it pertains to Acts 322 and 386. Case law requires us to consider a due process claim in light of the state's police power. The federal and state constitutions provide that no person shall be deprived of property without due process of law. U.S. Const. Fifth and Fourteenth Amendments; Louisiana's due process guarantee does not vary from the U.S. Constitution. The core of due process is "protection from arbitrary and unreasonable action[,] and when the ordinance or statute does not affect fundamental rights, but rather is merely economic or social regulation, it need only have a rational relationship to a legitimate governmental interest." *Med Express Ambulance Serv., Inc. v. Evangeline Par. Police Jury*, 96-543, p. 8 (La. 11/25/96), 684 So.2d 359, 365. "To have a property interest protected by due process, a person must clearly have more than an abstract need or desire for it. He must have a legitimate claim of entitlement to it rather than a unilateral expectation of it." *Am. Int'l Gaming Ass'n, Inc. v. Louisiana Riverboat Gaming Comm'n*, 00-2864, p. 14 (La.App. 1 Cir. 9/11/02), 838 So.2d 5, 16 (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701 (1972)).

17

In *State v. Edwards*, 00-1246 (La. 6/1/01), 787 So.2d 981, the defendant argued, in part, that the statute providing for the civil forfeiture of his vehicle which he was driving when he committed third offense driving while intoxicated deprived him of his due process rights. The supreme court addressed the effect of the police power on the due process rights of individuals, stating:

> Police power is inherent in the state. Under that power the state may enact laws to protect and preserve social order, to restrict and punish crime, to preserve the public peace, to safeguard and protect the health and morals of the people, even though the effect of such laws is to strike down private contracts, to deprive the citizen of his liberty to contract *and to take from him or destroy his property*. But the legislature is prohibited from enacting such laws except for adequate reasons. If the reasons are not adequate, such legislation violates the due process clauses of the federal and state Constitutions.
>
> The federal and state constitutions provide that no person shall be deprived of property without due process of law. U.S. Const. Fifth and Fourteenth Amendments; La.Const. art. 1 § 2. Balanced against this substantive due process right, however, is the police power of governing authorities to protect the health, safety, morals and general welfare of the people: "the inherent need of governments to protect the safety and welfare of their citizens from the unrestrained liberty of some individuals." Nowak, Constitutional Law 389 (1978), citing Corwin, Liberty Against Government 72 (1948).

*Id.* at 992 (emphasis added). *See also, Boudreaux v. Larpenter*, 11-410 (La.App. 1 Cir. 6/1/12), 110 So.3d 159; *Messina v. St. Charles Parish Council*, 03-644 (La.App. 5 Cir. 12/30/03), 865 So.2d 158, *writ denied*, 04-285 (La. 3/26/04), 871 So.2d 354, *cert. denied*, 544 U.S. 1060, 125 S.Ct. 2512 (2005); *Theriot v. Terrebonne Parish Police Jury*, 436 So.2d 515 (La.1983).

The Louisiana supreme court and the U.S. Supreme Court have also held that obligations of contracts and vested rights must cede to and cannot hinder the proper exercise of the police power of the state, as long as that power is exercised for a public end and is reasonably tailored to accomplish that end. *Louisiana Gas Serv. Co. v. Louisiana Public Serv. Com'n*, 245 La. 1029, 162 So.2d 555 (1964)

(citing *Treigle v. Acme Homestead Ass'n*, 297 U.S. 189, 56 S.Ct. 408 (1936)). *See also City of Shreveport v. Curry*, 357 So.2d 1078 (La.1978).

For legislation to be sustained under the police power, the legislation must evidence that "its operation tends in some degree to prevent an offense or evil or otherwise to preserve public health, morals, safety or welfare." *Francis v. Morial*, 455 So.2d 1168, 1172-73 (La.1984). Furthermore, a state's exercise of its police power "does not justify an interference with constitutional rights which is entirely out of proportion to any benefit redounding to the public." *City of Baton Rouge v. Williams*, 95-308, p. 6 (La. 10/16/95), 661 So.2d 445, 449 (quoting *Francis*, 455 So.2d at 1173).

The Supreme Court in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003), and our supreme court in *State v. Golston*, 10-2804 (La. 7/1/11), 67 So.3d 452, recognized the importance of the police power with regard to sexual offenses committed against children. While Acts 322 and 386 may not prevent sexual abuse of children, retroactive application of the Act will certainly serve "to preserve public health, morals, safety or welfare" and will likely serve as a means for victims to improve and/or preserve their mental and/or physical health as well as contribute to preserving the morals, safety, and welfare of all Louisiana citizens, especially the victims and their families. *Francis*, 455 So.2d at 1172-73. More importantly, the revival of claims for sexual abuse serves a compelling legitimate public interest by providing an opportunity for the most vulnerable members of our society to hold accountable those responsible for the lifelong damage they have endured.

In *Burmaster v. Plaquemines Parish Government*, 07-2432 (La. 5/21/08), 982 So.2d 795, the supreme court rejected the argument that the police power authorized the retroactive application of a statute that divested vested rights

19

concluding such retroactive application would contravene due process guarantees. In *Burmaster*, the supreme court did not address the above cited principles of the police power and the jurisprudence addressing it. We note again that the exception of liberative prescription is an inchoate right, not a *vested* right until it is sustained by a judgment. Accordingly, it is not a property interest protected by due process.

The federal due process implications for statutes such as Acts 322 and 386 that revive prescribed claims to allow child victims of sexual abuse to pursue civil claims for such abuse was addressed in *Sheehan v. Oblates of St. Francis de Sales*, 15 A.3d 1247 (Del. 2011). In *Sheehan, Id.* at 1259 (footnotes omitted), the Delaware supreme court rejected the same arguments the Diocese makes herein, explaining:

> The Oblates argue that the expiration of a statute of limitations for a civil action is a fundamental vested right, and once the time has lapsed, a defendant has a vested right in knowing that no person or entity can bring a claim against him. We do not agree. Delaware constitutional due process is coextensive with federal due process. Federal precedent has long held that unless the expiration of a statute of limitation creates a prescriptive property right, such as title in adverse possession, the legislature can revive a cause of action after the statute of limitation has expired. In 1945, the United States Supreme Court concluded that revival of a personal cause of action, that did not involve the creation of title, does not offend the Federal Constitution. Explicitly rejecting the fundamental right argument, the Court held that:

>> Statutes of limitation find their justification in necessity and convenience rather than in logic . . . They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay . . . Their shelter has never been regarded as . . . a 'fundamental right' . . . the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

> As a matter of constitutional law, statutes of limitation go to matters of remedy, not destruction of fundamental rights.

20

## DISPOSITION

For the reasons discussed herein, we hereby find that Act 322, as interpreted by Act 386, is constitutional and applies retroactively to revive all claims prescribed under the prior law governing claims for the sexual abuse of minors. The judgment of the trial court is affirmed. All costs are assessed to the Society of the Roman Catholic Church of the Diocese of Lafayette.

**AFFIRMED.**

# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 22-120

**SAM DOE**

**VERSUS**

**THE SOCIETY OF THE ROMAN CATHOLIC
CHURCH OF THE DIOCESE OF LAFAYETTE**

*CGF*

FITZGERALD, J., concurs and assigns reasons.

While I agree with the ultimate disposition of Chief Judge Elizabeth Pickett's plurality opinion, my legal analysis is slightly different.

At the outset, I agree that 2022 La. Acts 386, § 2 manifests an express legislative intent to revive all claims prescribed under the prior law. I also agree with Chief Judge Pickett's legal analysis in support of this conclusion.

Turning now to vested rights. In my view, the Diocese's right to plead prescription once liberative prescription has accrued constitutes a vested property right under Louisiana law. In support of this conclusion, Judge Jay Zainey's opinion in *Lousteau v. Congregation of Holy Cross Southern Province, Inc.*, 2022 WL 2065539 (E.D. La. 2022), is persuasive. For instance, Judge Zainey correctly explains that "[o]nce liberative prescription accrues, the civil obligation that once existed is replaced by a natural obligation." *Id.* at 16 (citing La.Civ.Code art. 1762(1)). This is unique to Louisiana. Judge Zainey also points out that

> once liberative prescription accrues, prescription loses its inchoate nature because only the defendant can renounce prescription, and interruption and suspension no longer apply to a prescribed claim. *Contra non valentem* likewise does not apply to a prescribed claim because it only applies to delay the commencement of prescription, not the running of prescription. In other words, unaccrued prescription may be inchoate in nature but accrued prescription is not.

*Id.* And "[o]nce liberative prescription accrues, the right to plead the defense is 'absolute, complete, unconditional, and independent of a contingency,' and it is therefore vested." *Id.* (quoting *In re American Waste & Pollution Control Co.*, 597 So.2d 1125, 1129-30 (La.App. 1 Cir. 1992)).

So does our analysis end here? In other words, should we reverse the trial court and simply conclude without further analysis that the retroactive application of Act 386 unconstitutionally divests the Diocese of its vested property right to plead accrued liberative prescription? The answer in my opinion is no.

Under the Louisiana constitution, a substantive-due-process challenge is generally reviewed with the following two-step analysis: "[T]he plaintiffs must first establish the existence of a constitutionally protected property or liberty interest. Once that interest has been established, a violation of substantive due process still requires arbitrary and capricious conduct by the governing authority." *Boudreaux v. Larpenter*, 11-410, p. 13 (La.App. 1 Cir. 6/1/12), 110 So.3d 159, 170 (citation omitted). However, the Louisiana Supreme Court has not followed this analysis when the subject of the due-process challenge is legislation that attempts to revive an otherwise prescribed cause of action. *See, e.g., Burmaster v. Plaquemines Parish Gov't*, 07-2432 (La. 5/21/08), 982 So.2d 795 (imposing an absolute constitutional bar on such legislation, thereby dispensing with rational basis review).

So does the retroactive mechanism of Act 386 amount to an absolute violation of substantive due process? If the answer is yes, the vested property right at issue—the Diocese's right to plead the defense of accrued liberative prescription—will be elevated above other vested rights; it will also be elevated above fundamental rights, which trigger strict scrutiny analysis. In my humble opinion, this is conceptually flawed.

2

In the end, 2022 La. Acts 386, § 2 should be subject to rational basis review. And for the reasons given by Chief Judge Pickett, I agree that the Louisiana Legislature had a rational basis for enacting this legislation.

**BRADBERRY, J., Dissents with Reasons.**

Once liberative prescription accrues, the right to plead the defense is "absolute, complete, unconditional, and independent of a contingency," and it is therefore vested. See *In re Am. Waste & Pollution Control Co.*, 597 So.2d 1125, 1130 (La.App. 1 Cir.), *writs denied*, 604 So.2d 1309, 1318 (La.1992) (citing *Voelkel v. Harrison*, 572 So.2d 724, 726 (La.App. 4th Cir. 1990), *writs denied*, 575 So.2d 391 (La.1991)(defining a vested right)). The idea that it is constitutionally permissible for the Legislature to revive a prescribed cause of action has been unequivocally rejected by the Louisiana Supreme Court on several occasions. See *Hall v. Hall*, 516 So.2d 119 (La.1987) (per curiam); *Bouterie v. Crane*, 616 So.2d 657 (La.1993) (citing *Hall*, 516 So.2d 119); *Falgout v. Dealers Truck Equip. Co.*, 98-3150, (La. 10/19/99) 748 So.2d 399. In *Elevating Boats, Inc. v. St. Bernard Parish*, 00-3518, p. 14, (La. 9/5/01), 795 So.2d 1153, 1164, (quoting 1 Marcel Planiol, *Treatise on the Civil Law*, § 243 (La. State Law Inst. trans. 1959)(12th ed. 1939)), *overruled on other grounds by Anthony Crane Rental, L.P. v. Fruge*, 03-115 (La. 10/21/03), 859 So.2d 631, Chief Justice Calogero, writing for the majority explained why a cause of action cannot be revived once liberative prospection has accrued:

> [A]fter the prescriptive period on an obligation has run, an obligor gains the *right* to plead prescription. In such a situation, that *right* to plead prescription has already accrued and application of a lengthened prescriptive period to revive the obligation, and effectively remove the right to plead prescription, would "modify or suppress the effects of a right already acquired." Thus, we have noted that the Legislature is without the authority to revive a prescribed claim.

Moreover, the appellate courts of the state and at least one federal court in Louisiana have consistently held that the Legislature could not revive a prescribed claim. *Johnson v. The Roman Cath. Church for the Archdiocese of New Orleans*, 02-

429 (La.App 1 Cir. 2/14/03), 844 So.2d 65, *writs denied*, 03-730, 03-778 (La. 5/9/03); *Orleans Parish Sch. Bd. v. United States Gypsum Co.*, 892 F.Supp. 794, (E.D. La. 1995), *aff'd.*, 114 F.3d 66 (5th Cir. 1997), *cert. denied*, 522 U.S. 995, 118 S.Ct. 557 (1997) (citing numerous Louisiana appellate court decisions); *City of New Orleans v. W.R. Grace & Co.*, No. 92-5, (E.D. La., 1992) (unpublished opinion).

Though *Chance v. American Honda Motor Co.*, 93-2582, (La. 4/11/94), 635 So.2d 177, and *Cameron Parish School Board v. ACandS, Inc.*, 96-895 (La. 1/14/97), 687 So.2d 84, have led some to question whether the Supreme Court has begun to alter its historically stalwart rejection of the Legislature's ability to revive a prescribed cause of action, those cases did *not* hold that the Legislature could revive a prescribed claim where it provided a clear and unequivocal expression of its intent to do so. In fact, *Elevating Boats*, 795 So.2d 1153, seems to have rejected that position after those cases were issued. Further, our supreme court has held that "even where the legislature has expressed its intent to give a law retroactive effect, that law may not be applied retroactively if it would impair contractual obligations or disturb vested rights." *Morial v. Smith & Wesson Corp.*, 00-1132, p. 9 (La. 4/3/01), 785 So.2d 1, 10, *cert. denied*, 534 U.S. 951, 122 S.Ct. 346 (2001); *Segura v. Frank*, 93-1271, 93-1401 (La. 1/14/94), 630 So.2d 714, *cert. denied*, 511 U.S. 1142, 114 S.Ct. 2165 (1994).

It is my opinion that while our Louisiana Supreme Court may have opened the door to reviving prescribed claims with *Chance* and *Cameron Parish*, it has yet to actually walk through it. Being that we are an intermediate, error-correcting court and they are the policy making court, we are bound to follow the clear decisions of the Louisiana Supreme Court. *Lafourche Parish Water Dist. No. 1 v. Digco Util. Const., L.P.*, 18-1112 (La.App. 1 Cir. 3/13/19), 275 So.3d 20, *writ denied*, 19-577

(La. 6/17/19); 274 So.3d 1257. *See also, Latino v. Binswanger Glass Co.*, 532 So.2d 960 (La.App. 5 Cir. 1988); *Arrington v. ER Physician Grp., Inc.*, 12-995 (La.App. 3 Cir. 2/6/13), 110 So.3d 193, *writ denied*, 13-493 (La. 4/12/13), 111 So.3d 1011. In my opinion, the law as stated in the Louisiana Supreme Court's many prior pronouncements sets forth that prescription has clearly been held to be a vested property right, and that revival is still, to this point, unconstitutional. Therefore, I must dissent from the majority's finding.